# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:      THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

_____
                                                            )
SKYVIEW CABINET USA, INC.,                 )
                                                            )
                            Plaintiff,            )
                                                            )            Court No. 22-00080
            v.                                          )
                                                            )            PUBLIC VERSION
UNITED STATES,                                   )
                                                            )
                            Defendant,        )
                                                            )
            and                                       )
                                                            )
MASTERBRAND CABINETS, INC.,            )
                                                            )
                            Defendant-Intervenor.    )
_____)

## DEFENDANT'S RESPONSE IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

TARA K. HOGAN
Assistant Director

Of Counsel:

JOSEPH F. CLARK                                    IOANA CRISTEI
Attorney, Enforcement and Operations      Trial Attorney
Office of the Chief Counsel                        Commercial Litigation Branch
U.S. Customs and Border Protection          U.S. Department of Justice
                                                               Civil Division
ERIC BREKKE                                          P.O. Box 480
Attorney, Enforcement and Operations      Ben Franklin Station
Office of the Chief Counsel                        Washington, D.C. 20044
U.S. Customs and Border Protection          Tel: (202) 305-0001

September 19, 2022                                  *Attorneys for Defendant*

## TABLE OF CONTENTS

I.     Administrative Determination Under Review ...................................................... 1

II.    Issues Presented For Review ............................................................................... 2

STATEMENT OF FACTS ............................................................................................. 2

I.     Enforce And Protect Act .................................................................................... 2

II.    The Investigation At Issue ................................................................................. 4

SUMMARY OF THE ARGUMENT ............................................................................. 9

ARGUMENT ................................................................................................................ 10

I.     Standard Of Review ........................................................................................ 10

II.    CBP Correctly Found That The Record Contains Substantial Evidence Supporting A Determination That Covered Merchandise Entered The United States Through Evasion ............................................................................................. 11

III.   CBP Reasonably Applied An Adverse Inference Against Rowenda Kitchen, Based On Rowenda Kitchen's Failure to Cooperate ......................................... 17

IV.   Because There Was No Question Regarding The Scope Of The Covered Merchandise, CBP Did Not Err By Declining To Refer This Matter To Commerce ........................................................................................................ 20

V.    CBP Does Not Bear The Burden To Affirmatively Establish The Origin Of Imported Material; The Burden Rests With The Importer .................................. 21

VI.   CBP Did Not Violate Any Due Process Right.................................................. 23

VII.  CBP Relied Upon Credible And Probative Evidence, Not "Disallowed Hearsay," As Skyview Contends .......................................................................... 28

CONCLUSION ............................................................................................................. 29

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                     **Page(s)**

*A Classic Time v. United States*,
   123 F.3d 1475 (Fed. Cir. 1997) ............................................................. 26

*All One God Faith, Inc. v. United States, No. 20-00164*,
   2022 WL 3539511 (Ct. Int'l Trade Aug. 18, 2022) ........................................ 18-19

*Allied Tube & Conduit Corp. v. United States*,
   132 F. Supp. 2d 1087 (Ct. Int'l Trade 2001) .............................................. 22

*Altx, Inc. v. United States*,
   370 F.3d 1108 (Fed. Cir. 2004) ............................................................. 11

*Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*,
   419 U.S. 281 (1974) ......................................................................... 24

*Cook v. United States*,
   536 F.2d 365 (Ct. Cl. 1976) ................................................................ 26

*Diamond Tools Tech. LLC v. United States*,
   545 F. Supp. 3d 1324 (Ct. Int'l Trade 2021) ............................................. 25

*Downhole Pipe & Equip., L.P. v. United States*,
   776 F.3d 1369 (Fed. Cir. 2015) ............................................................. 22

*Elbit Sys. of Am., LLC v. Thales Visionix, Inc.*,
   881 F.3d 1354 (Fed. Cir. 2018) ............................................... 12, 13, 14, 17

*Fujitsu Gen. Ltd. v. United States*,
   88 F.3d 1034 (Fed. Cir. 1996) .............................................................. 22

*Gilda Indus., Inc. v. United States*,
   446 F.3d 1271 (Fed. Cir. 2006) ............................................................. 26

*Hayes v. Dep't of Navy*,
   727 F.2d 1535 (Fed. Cir. 1984) ............................................................. 28

*Hyundai Elec. & Energy Sys. Co. v. United States*,
   466 F. Supp. 3d 1303 (Ct. Int'l Trade 2020) ............................................. 23

*Int'l Custom Prods., Inc. v. United States*,
   791 F.3d 1329 (Fed. Cir. 2015) ............................................................. 26

*Jacobi Carbons AB v. United States*,
   222 F. Supp. 3d 1159 (Ct. Int'l Trade 2017) ........................................... 11-12

*Johnson v. United States*,
   628 F.2d 187 (D.C. Cir. 1980) .............................................................. 28

*Kemira Fibres Oy v. United States*, 18 C.I.T. 687,
    858 F. Supp. 229 (1994) ........................................................................ 24

*Max Fortune Indus. Ltd. v. United States*,
    853 F. Supp. 2d 1258 (Ct. Int'l Trade 2012) ....................................... 27

*Micron Tech., Inc. v. United States*,
    117 F.3d 1386 (Fed. Cir. 1997) ............................................................ 27

*MidContintent Nail Corp. v. United States*,
    949 F. Supp. 2d 1247 (Ct. Int'l Trade 2013) ................................... 26-27

*Mitchell v. W.T. Grant Co.*,
    416 U.S. 600 (1974) .............................................................................. 26

*Mueller Comercial de Mexico S. De R.L. de C.V. v. United States*,
    753 F.3d 1227 (Fed. Cir. 2014) ............................................................ 19

*Nippon Steel Corp. v. United States*,
    337 F.3d 1373 (Fed. Cir. 2003) ............................................................ 18

*Nippon Steel Corp. v. United States*,
    458 F.3d 1345 (Fed. Cir. 2006) ............................................................ 11

*Norwegian Nitrogen Prods. v. United States*,
    288 U.S. 294 (1933) .............................................................................. 26

*PAM, S.p.A. v. United States*,
    582 F.3d 1336 (Fed. Cir. 2009) ............................................................ 11

*Primary Steel, Inc. v. United States*,
    834 F. Supp. 1374 (Ct. Int'l Trade 1993) ........................................... 22

*PSC VSMPO-Avisma Corp. v. United States*,
    688 F.3d 751 (Fed. Cir. 2012) ....................................................... 23, 24

*Richardson v. Perales*,
    402 U.S. 389 (1971) .............................................................................. 28

*Royal Brush Mfg., Inc. v. United States*,
    483 F. Supp. 3d 1294 (Ct. Int'l Trade 2020) ............................. 24, 25, 27

*Royal Brush Mfg., Inc. v. United States*,
    545 F. Supp. 3d 1357 (Ct. Int'l Trade 2021) ....................................... 23

*SKF USA Inc. v. United States*,
    263 F.3d 1369 (Fed. Cir. 2001) ..................................................... 10, 11

*Star Fruits S.N.C. v. United States*,
    393 F.3d 1277 (Fed. Cir. 2005) ............................................................ 10

*Sunpreme Inc. v. United States*,
    946 F.3d 1300 (Fed. Cir. 2020) (en banc) ............................................................ 21

*Veg-Mix, Inc. v. U.S. Dep't of Agriculture*,
    832 F.2d 601 (D.C. Cir. 1987) ...................................................................... 28, 29

*Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
    435 U.S. 519 (1978) ............................................................................................ 26

*Wheatland Tube Co. v. United States*,
    161 F.3d 1365 (Fed. Cir. 1998) ......................................................................... 10

**Statutes**

19 U.S.C. § 1517 ........................................................ 2, 3, 4, 10, 11, 17, 20, 21, 22, 27
19 U.S.C. § 1677f ................................................................................................. 27

**Regulations**

19 C.F.R. § 165.4 ........................................................................................ 24, 25, 28
19 C.F.R. § 165.5 ...................................................................................................... 7
19 C.F.R. § 165.21 .................................................................................................... 4
19 C.F.R. § 165.22 .................................................................................................... 4
19 C.F.R. § 165.23 ........................................................................................ 3, 4, 7, 8, 9
19 C.F.R. § 165.25 .................................................................................................. 23
19 C.F.R. § 351.304 ................................................................................................ 27

**Administrative Determinations**

*Investigation of Claims of Evasion of Antidumping and Countervailing Duties*,
    81 Fed. Reg. 56,477 (Aug. 22, 2016) ............................................................ 24, 25

*Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China*,
    85 Fed. Reg. 22,126 (Dep't Commerce Apr. 21, 2020)........................................... 4

*Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China*,
    85 Fed. Reg. 22,134 (Dep't Commerce Apr. 21, 2020)................................. 4, 5, 6, 7

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:     THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE
_____

|  |  |  |
|---|---|---|
| SKYVIEW CABINET USA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Court No. 22-00080 |
| v. | ) | |
| | ) | PUBLIC VERSION |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MASTERBRAND CABINETS, INC., | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |
| _____ | ) | |

**DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Defendant, the United States, respectfully submits this response in opposition to the

motion for judgment upon the agency record filed by plaintiff Skyview Cabinet USA, Inc.

(Skyview).  Skyview challenges several aspects of U.S. Customs and Border Protection's (CBP)

final determination as to evasion concerning certain entries of wooden cabinets and vanities and

components thereof (WCV merchandise) that plaintiff claimed had been manufactured in

Malaysia.

## I.    Administrative Determination Under Review

Skyview challenges CBP's September 16, 2021 affirmative final determination, and

CBP's January 28, 2022 administrative review of the final determination as to evasion with

respect to WCV merchandise.  P.R. 187, 197.

## II.   <u>Issues Presented For Review</u>

1.      Whether CBP's determination that covered merchandise entered the United States through evasion was arbitrary and capricious where the information Skyview provided failed to overcome the substantial evidence demonstrating evasion.

2.      Whether CBP was required to refer the matter to the Department of Commerce where CBP determined, based on substantial evidence, that the imported merchandise was manufactured in China and transshipped through Malaysia, and there was no question of scope of the covered merchandise.

3.      Whether CBP has impermissibly shifted the burden of proof where the burden to establish entitlement to a reduced duty is born by the respondent, not the Government, and where verification is a process to confirm information already received, not to discover new information.

4.      Whether CBP violated Skyview's due process rights where CBP followed its procedures for confidential documents and provided summaries of the protected information to Skyview.

5.      Whether CBP permissibly relied upon information provided in affidavits, where affidavit testimony is routinely relied upon in such investigations and does not constitute hearsay evidence.

## <u>STATEMENT OF FACTS</u>

## I.   <u>Enforce And Protect Act</u>

EAPA, codified at 19 U.S.C. § 1517, established an administrative procedure for CBP to investigate allegations of evasion of antidumping and countervailing duty orders, as part of the United States' efforts to ensure a level playing field for domestic industries.  Under EAPA, Federal agencies or interested parties—including domestic and foreign manufacturers, producers,

exporters; certified unions or recognized unions or groups of workers; trade or business associations in a particular industry—may submit allegations to CBP that reasonably suggest that merchandise covered by antidumping (AD) and countervailing duty (CVD) orders has entered the United States through evasion. 19 U.S.C. § 1517(a)(6), § 1517(b). Upon receiving an allegation, the statute mandates a formal investigation process. 19 U.S.C. § 1517(b)(1). Pursuant to the statutory note to 19 U.S.C. § 1517, CBP must "prescribe such regulations as may be necessary to implement the amendments made by this section." Trade Facilitation and Trade Enforcement Act of 2015, Pub. L. No. 114-125, § 421(d), 130 Stat. 169 (2016).

Generally, the investigation of an EAPA allegation proceeds as follows: Within 15 calendar days of receiving an allegation, if CBP determines that the allegation reasonably suggests covered merchandise has been entered through evasion, CBP must initiate an investigation, 19 U.S.C. § 1517(b)(1), and within 90 calendar days, CBP makes its initial determination of reasonable suspicion of evasion and issue interim measures, which includes the suspension and extension of certain liquidated entries, 19 U.S.C. § 1517(e). Congress granted CBP broad discretion to determine the scope and means of the investigation, including authority to collect and verify any information it deems necessary to make its evasion determination. 19 U.S.C. § 1517(c)(2). CBP's regulations set forth the types of and requirements for the submission of factual information by parties. 19 C.F.R. § 165.23. For example, parties to the investigation may voluntarily submit information to CBP or may provide information in response to requests by CBP. *Id.* Parties to the investigation have 200 days from the date of the initiation of the investigation to submit factual information on the record, and 230 calendar days to submit written arguments. *Id.* Parties to the investigation have 15-calendar days to submit responses to

other parties' written arguments.  *Id*.  Interested parties who are not parties to the investigation may also provide information in response to requests by CBP.  *Id*.

During the investigation, CBP maintains an administrative record of material obtained and considered during the investigation.  19 U.S.C. § 1517(c)(2); 19 C.F.R. § 165.21.  No later than 300 calendar days after the initiation of the investigation, CBP is normally required to make a determination as to whether substantial evidence exists based on the administrative record to find evasion.  19 U.S.C. § 1517(c)(1)(A); 19 C.F.R. § 165.22.  Interested parties may request reviews of initial determinations, and CBP must complete its reviews and issue final administrative determinations no later than 60 business days after each request.  19 U.S.C. § 1517(f).  EAPA permits for judicial review in this Court of CBP's final administrative determination and the original determination as to evasion.  19 U.S.C. § 1517(g)(1).

## II.   <u>The Investigation At Issue</u>

On November 13, 2020, CBP initiated an EAPA investigation to determine whether WCV merchandise had been entered into the United States by means of evasion.  C.R. 14 (Initiation Memo-Skyview).

CBP initiated the investigation in response to a domestic producer's allegation that Skyview, along with three other importers,[1] was evading AD/CVD orders on WCV merchandise from China.[2]  *See* MasterBrand Cabinets, Inc. (MasterBrand) EAPA Allegation (C.R. 1-4).

---

[1]  The other three companies are not parties to this lawsuit and will not be discussed in this brief.

[2]  Specifically, the AD/CVD orders A-570-106 and C-570-107 covered WCV merchandise from China, which generally consists of wooden cabinets and vanities that are for permanent installation (including floor mounted, wall mounted, ceiling hung or by attachment of plumbing), and wooden components thereof.  *Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China*, 85 Fed. Reg. 22,126 (Dep't Commerce Apr. 21, 2020) (antidumping duty order); *Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China*, 85 Fed. Reg. 22,134 (Dep't Commerce Apr. 21, 2020) (countervailing duty order).

MasterBrand alleged that Skyview had evaded these orders by importing WCV merchandise that was manufactured in China and transshipped through Malaysia.  C.R. 3 at 158-59.  MasterBrand also alleged that the imported merchandise was not produced by the claimed manufacturer, Rowenda Kitchen SDN. BHD. (Rowenda Kitchen) in Malaysia.  *Id.*

MasterBrand attached evidence in support of this contention that Rowenda Kitchen was not a manufacturer but, instead, was merely a transshipment point for China-origin WCV merchandise imported into the United States by Skyview.  *Id.* at 173 (Attachments). Specifically, MasterBrand attached aggregate trade data showing surges in overall imports into Malaysia from China, and into the United States from Malaysia, of merchandise under tariff classifications subject to the AD and CVD orders.  These surges came after the imposition of provisional measures as a result of Commerce's affirmative preliminary determination in its CVD investigation of WCV from China.  *Id.* at 163-65.

In addition, MasterBrand submitted company-specific shipment data sourced from a commercial import data service that indicated Rowenda Kitchen began shipping wooden cabinets to the United States in August 2019, the month in which the CVD investigation provisional measures were imposed.  The data included shipments by Rowenda Kitchen during the 2019-2020 period.  *Id.* at 165-166.  Finally, MasterBrand included an affidavit from a third-party market researcher citing statements by (1) [

], indicating that Rowenda Kitchen works with Chinese producers and engages in transshipment of Chinese-origin merchandise to the United States, including wooden cabinets produced in China; (2) [                              ], who, in response to questions about [

]; and (3) [                    ] that the Rowenda Kitchen facilities are relatively small, that they are equipped for minor

processing such as wood treatment and painting, rather than substantive manufacturing such as milling, that a nearby building was limited to administrative activities, and that showrooms were either closed down or unoccupied. *Id.* at 166-68.

CBP issued a request for information through form CF28[3] to Skyview on November 24, 2020, regarding the provenance of WCV merchandise that Skyview imported into the United States, as well as information regarding the purported production of WCV merchandise by Rowenda Kitchen. C.R. 20. On December 18, 2020, Skyview responded by providing an entry summary, proof of payment, and export documents from Rowenda Kitchen. C.R. 22 at 515. In response to a CBP request for missing documents, on January 28, 2021, Skyview sent CBP a certificate of incorporation for Rowenda Kitchen and a flyer with the manufacturing location. C.R. 33 at 670, 673. On February 8, 2021, Skyview submitted an affidavit from [

] affirming the suppliers from which Rowenda Kitchen sources raw materials used in the manufacture of their products. C.R. 35. Finally, on February 9, 2021, Skyview submitted various photographs, business licenses, invoices, and sales catalogs. C.R. 36-62.

On February 19, 2021, CBP announced the initiation of its consolidated investigation and the imposition of interim measures. C.R. 69 (Notice of Investigation). Specifically, based on information submitted by MasterBrand and Skyview's responses to the CF28 requests for information to each of the importers, CBP determined that there was reasonable suspicion that these importers entered covered merchandise into the United States through evasion, by means of transshipment through Malaysia.

---

[3] The form notes that the information requested is "necessary for proper classification and/or appraisement of your merchandise and/or for insuring import compliance of such merchandise" and is sent at the start of EAPA investigations.

On March 15, 2021, CBP issued requests for information to Skyview and Rowenda Kitchen, requesting information related to corporate structure, affiliations, accounting and financial documentation, and sales-specific order, sales, transport, and product details.  C.R. 80 (Rowenda Kitchen), 81 (Skyview).  Skyview submitted its initial questionnaire response on April 8, 2021.  C.R. 91.  CBP issued a supplemental request for information to Skyview on April 12, 2021, C.R. 92, and Skyview responded on April 23, 2021, C.R. 95.

Rowenda Kitchen did not submit a response by its deadline of March 29, 2021.  *See* C.R. 107 at 166.  CBP extended the deadline for Rowenda Kitchen's response to April 7, 2021, and a Rowenda Kitchen official responded that he did not receive the originally emailed RFI, speculated that it perhaps ended up in his "junk mail," and requested additional time to prepare a response.  *Id.*  CBP gave Rowenda another extension to April 12, 2021, followed by a final deadline of April 15, 2021.  Rowenda Kitchen ultimately failed to submit any response.  *Id.*

On June 7, 2021, Skyview filed a voluntary submission of factual information, claiming for the first time that its WCV were produced in Malaysia by Roxy Heritage Furniture Manufacturer SDN. BHD. (Roxy).  P.R. 155.  In that submission, Skyview provided a variety of exhibits with titles indicating that the documents related to production activities of both Rowenda Kitchen and Roxy, and a submission certification document identified as provided to comply with the requirements of 19 C.F.R. § 165.5(b) with the name and signature of a Skyview official.  P.R. 156-170.  Skyview's counsel also provided the following narrative explanation:

> {Skyview} is submitting additional voluntary information pursuant to 19 C.F.R. § 165.23.  As stated to {CBP}, Skyview has made progress in documenting a complicated supply chain of {Rowenda Kitchen}.  Even with the extension, there are not sufficient time to complete the process.  However, Skyview has learned additional information pertaining to its relationship with Rowenda as provided [                    ]  The cabinets in question were produced in

> Malaysia in conjunction with {Roxy} as demonstrated in the attached. Additional emails with documents to follow.

P.R. 155.

In response to that submission, MasterBrand submitted rebuttal factual information pursuant to 19 C.F.R. § 165.23(c)(2). C.R. 99. Skyview and MasterBrand then submitted both written arguments and responses to each others' written arguments. P.R. 178, 179; C.R. 100.

On September 16, 2021, CBP issued its final determination of evasion, concluding that substantial evidence demonstrates that the subject importers, including Skyview, imported Chinese origin WCV into the United States and misrepresented the country of origin as Malaysia, thereby evading the orders. C.R. 107. The substantial evidence upon which CBP made its conclusion consisted of: (1) the aggregate trade data showing surges in overall imports into Malaysia from China, and into the United States from Malaysia; (2) shipment data indicating Rowenda Kitchen began shipping wooden cabinets to the United States in the same month in which CVD investigation provisional measures were imposed; and (3) an affidavit from a market researcher citing statements indicating that the Rowenda Kitchen facilities are not equipped for production and the company does not engage in production. *Id.* at 167-68.

CBP determined that the materials Skyview provided did not contain production information demonstrating that the WCV that Skyview imported from Rowenda Kitchen was, in fact, produced in Malaysia. *Id.* at 169. CBP also applied an adverse inference against Rowenda Kitchen for its failure to respond to the agency's requests for information. *Id.* Specifically, Rowenda Kitchen's failure to cooperate led CBP to rely on evidence otherwise on the record regarding identification of the country of origin of the merchandise. *Id.* at 169. That evidence indicated WCV imported by Skyview was not produced in Malaysia and instead originated in China. *Id.*

8

Skyview requested an administrative review of the determination of evasion, P.R. 188-189, and CBP commenced its review on November 1, 2021.  In its request for administrative review, Skyview argued that:  (1) Skyview presented evidence sufficient to demonstrate no substantial evidence existed to support a finding that Skyview imported covered merchandise; (2) CBP incorrectly applied adverse inferences against Skyview; (3) CBP should have referred the matter to Commerce because CBP cannot make a covered merchandise determination; and (4) CBP's EAPA decision was otherwise illegal.  P.R. 189.

On January 28, 2022, the Office of Trade, Regulations and Rulings affirmed CBP's final determination.  P.R. 197 (Review Determination).  The Review Determination analyzed the record to determine whether substantial evidence of evasion exists, specifically examining whether the WCV at issue are in fact of Chinese origin, and if CBP properly found evasion through transshipment.  *Id.*  The review did not address Skyview's contention that adverse inferences were applied against Skyview, and found that cumulative and substantial evidence exists that the merchandise was not manufactured in Malaysia.  *Id.*

## SUMMARY OF THE ARGUMENT

CBP's determination of evasion is supported by substantial evidence on the record, and thus its decision was not arbitrary or capricious.  The record evidence demonstrates that Skyview imported Chinese-origin WCV that were transshipped through Malaysia to the United States to evade AD/CVD duties.  The agency relied on foreign market research, to include data of Chinese and Malaysian shipments.  CBP reasonably found that the information Skyview provided was unreliable, and failed to overcome the substantial evidence demonstrating evasion.

Skyview's remaining arguments are untenable.  CBP has not shifted the burden of proof to Skyview—it is instead Skyview's burden to provide evidence to show there was no transshipment.  In addition, CBP has not violated Skyview's due process rights by maintaining

certain investigation evidence as confidential because it provided Skyview the opportunity to review summaries of that business confidential information—as required by CBP's regulations. Finally, CBP has not violated any prohibition on hearsay evidence in its determination; rather, administrative agencies routinely rely on affidavit testimony in investigations, and such evidence does not constitute hearsay.  Accordingly, CBP appropriately concluded that there was transshipment of Chinese-origin WCV through Malaysia to the United States in accordance with the substantial record evidence.  CBP's decision should be affirmed.

## ARGUMENT

### I.   Standard Of Review

In reviewing CBP's evasion determinations, this Court determines whether any determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  19 U.S.C. § 1517(g)(2).

"Courts look for a reasoned analysis or explanation for an agency's decision as a way to determine whether a particular decision is arbitrary, capricious, or an abuse of discretion." *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (Fed. Cir. 1998).  "An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represent an unreasonable judgment in weighing relevant factors."  *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005).  "An agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently."  *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001).

## II. CBP Correctly Found That The Record Contains Substantial Evidence Supporting A Determination That Covered Merchandise Entered The United States Through Evasion

Skyview's principal argument is that there is not substantial evidence to support CBP's finding of evasion, and thus the finding is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. Pl. Br. 11-20. Skyview raises various issues with CBP's determination, arguing that CBP did not adequately evaluate the record evidence. *Id.* A party challenging a determination based on the substantial evidence standard "has chosen a course with a high barrier to reversal." *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006). Skyview cannot overcome this barrier because, as we demonstrate, the record of this investigation contains substantial evidence supporting a determination that covered merchandise entered the United States through evasion, resulting in the avoidance of applicable AD/CVD deposits or other security.

When conducting EAPA investigations, CBP must make a determination of evasion based on substantial evidence. 19 U.S.C. § 1517(c). Substantial evidence is generally "more than a mere scintilla," but "less than the weight of the evidence." *Altx, Inc. v. United States*, 370 F.3d 1108, 1116 (Fed. Cir. 2004) (internal quotation marks and citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *PAM, S.p.A. v. United States*, 582 F.3d 1336, 1339 (Fed. Cir. 2009) (citations omitted). Skyview asserts that CBP did not adequately review the information on the record, and that certain information was not reliable for reasons that Skyview does not substantively support. Pl. Br. 14. Skyview also asserts that it provided CBP with documentation sufficient to make a "substantial evidence" determination, but that the agency disregarded that evidence. *Id.* 17-18. However, the "possibility of drawing two inconsistent conclusions from the evidence does not preclude the agency's finding from being supported by substantial evidence." *Jacobi Carbons*

11

*AB v. United States*, 222 F. Supp. 3d 1159, 1168 (Ct. Int'l Trade 2017) (citations omitted).

Indeed, the agency's choice to "favor one conclusion over the other is the epitome of a decision

that must be sustained upon review for substantial evidence." *Elbit Sys. of Am., LLC v. Thales*

*Visionix, Inc*., 881 F.3d 1354, 1356 (Fed. Cir. 2018) (citation omitted).

      Here, substantial evidence demonstrated that the merchandise Skyview imported from

Rowenda Kitchen was transshipped from China through Malaysia to the United States based in

part on trade data.  Specifically, data on the record showed a significant decrease in U.S. imports

of merchandise from China under tariff classifications containing subject merchandise following

the imposition of provisional measures as a result of Commerce's affirmative preliminary

determination in its CVD investigation of WCV from China.  P.R. 3.  The data also showed a

concurrent massive increase in U.S. imports of the same merchandise from Malaysia.  *Id.*

However, there were no manufacturers in Malaysia with the ability to produce meaningful

quantities of wooden cabinets or vanities to explain the sudden exponential increase in exports of

such merchandise from Malaysia to the United States.  *Id.*  In addition to the U.S. import

statistics, Malaysian imports of relevant merchandise from China increased substantially

following the imposition of preliminary duties on WCV from China, further indicating that

Chinese-origin WCV were being transshipped through Malaysia.  *Id.*

      The record also contained specific evidence indicating that Rowenda Kitchen is a

Malaysian entity that is transshipping Chinese-origin WCV.  Bill of lading data showed that

Rowenda Kitchen started exporting merchandise meeting the description of subject merchandise

to the United States in August 2019.  *Id.*  This month was the same month in which provisional

measures were first imposed pursuant to Commerce's affirmative preliminary determination in

the CVD investigation.  *Id.*  In addition, [

], expressly stated that Rowenda Kitchen works with Chinese producers and engages in transshipment of Chinese-origin merchandise to the United States, including wooden cabinets produced in China.  *Id.*; C.R. 107.  The source stated that Rowenda Kitchen repackages the products from China and that the company generally is able to unload the products from one container and repackage and reload the products into another container for export to the United States in [                    ].  P.R. 3.  Supporting this statement, as of [                    ], there did not appear to be any substantive manufacturing operations at Rowenda Kitchen's factory in Malaysia.  *Id.*  [                    ] also spoke to [

.]  *Id.*; C.R. 107.  [

].  P.R. 3; C.R. 107.  All of this constitutes substantial evidence supporting CBP's determination of evasion.

Skyview contends that CBP disregarded record evidence.  But the evidence that Skyview provided did not explain the discrepancies in the data.  *See* Pl. Br. 17-18.  Specifically, in its initial response, Skyview stated its "local contact visited the manufacturer to verify their capacity, reviewed manpower, machines, and raw material."  *See* P.R. 22.  In its initial request for information on March 15, 2021, CBP asked Skyview for the general ledger chart of accounts, pre-closing and closing trial balances, and all accounts payable records covering the calendar or business years 2019 and 2020.  P.R. 81.  Skyview ignored this request in its response, not even referencing the requested questions.  *See* P.R. 91.  In this response, Skyview also failed to provide the purchase order CBP requested for an entry.  *Id.*

CBP repeated these requests in its April 12, 2021, supplemental RFI, P.R. 92, and Skyview stated it was providing "the P&L, balance sheet, and tax return in Attachment 4," P.R. 95, which was unresponsive to CBP's request.  Further, while the tax return includes Schedule L,

13

listing information such as the balance sheet amounts of cash, and accounts payable, the tax

return is not signed, and there is no indication that the version submitted was the same

information submitted on their actual tax return filed with the IRS.  *See* P.R. 95, Attachment 4.

In response to CBP's repeated requests for the purchase order, Skyview provided a document in

its supplemental response that did not appear to be a legitimate purchase order.  *Id.*, Attachment

6.  There were no buyer or seller names listed on the document, nor were there any pricing or

payment terms.  *See id.*  The document only contained two columns of data for which Skyview

provided no explanation.  *See id.*

Finally, in its April 12, 2021, supplemental request for information, CBP asked Skyview

to "{p}rovide evidence that {its} local contact did visit the manufacturer and performed the tasks

identified."  P.R. 92.  In response, Skyview only provided documentation that appears to refer to

airline itineraries, none of which even makes mention of Rowenda Kitchen or its specific

location, let alone its operations.  P.R. 95, Attachment 1.

But Skyview's responses to the requests for information do not contain production

information demonstrating that the WCV imported was produced in Malaysia.  Further, the

various omissions and discrepancies in Skyview's responses to the requests for information

called into question the accuracy of the information provided.  Accordingly, CBP determined

that this limited amount of information was not sufficient to demonstrate Rowenda Kitchen was

in fact the manufacturer.

All of Skyview's responses to CBP's requests for information referred to Rowenda

Kitchen as the manufacturer of the merchandise.  In the June 7, 2021 voluntary submission,

however, Skyview, *for the first time*, stated the submission as a whole indicates "{t}he cabinets

in question were produced in Malaysia in conjunction with {Roxy}."  C.R. 155-170.  This June

7, 2021 submission included a signed certification document dated April 6, 2021. If this document were valid, it would indicate that Skyview was aware of the alleged involvement of Roxy prior to Skyview's initial response on April 8, 2021—despite the fact that *none* of Skyview's responses contained any mention of Roxy. Accordingly, if Roxy was somehow relevant to this investigation, and if the April 6, 2021, certification document provided with the June 7, 2021, submission was valid, then for at least two months (between April 6 and June 7, 2021) Skyview concealed Roxy's involvement from CBP, thereby hindering CBP's ability to conduct its investigation. Further, CBP found that the certification document accompanying the June 7, 2021, submission looks identical to the certification submitted with Skyview's April 8, 2021, response, suggesting the former may not have signed for the June 7, 2021 submission. CBP thus determined that the inconsistencies in the documentation rendered Skyview's submissions unreliable. C.R. 107.

Even if the June 7, 2021, voluntary submission was considered to have been properly certified by Skyview, CBP determined that the information in the submission claimed to relate to Rowenda Kitchen and Roxy would still not constitute credible evidence. CBP found no basis for concluding those documents originated with Rowenda Kitchen or Roxy, because neither party responded to any requests for information. The only reference in the June 7, 2021, submission to any involvement with the submission by Rowenda Kitchen or Roxy staff is a vague allusion to the name of one individual Skyview had in a prior submission publicly identified as a contact at Rowenda Kitchen. Further, Rowenda Kitchen did not provide a response to the requests for information, despite being given multiple opportunities to do so. The requests CBP made to Rowenda Kitchen included significant information relating to its production and sale activities, including transactions related to the importers. P.R. 37, 53, 110; C.R. 20, 80.

Even so, CBP determined that the information in the submission was not sufficient to demonstrate the imported merchandise was manufactured by Rowenda Kitchen or Roxy.  C.R. 107 at 171.  Skyview attached a document to its June 7, 2021 submission claiming that Rowenda Kitchen subcontracted the production of door panels, door frames, and drawers to Roxy, and then added additional components or completed the production of the cabinets prior to exportation to the United States.  C.R. 167.  But the documentation itself failed to support the claim.  While Skyview included a "sub-contractor cooperation contract" between Rowenda Kitchen and Roxy, the contract did not specifically mention cabinets, or specify what product is covered by the agreement.  C.R. 160.  Notably, Rowenda Kitchen produces furniture.  Roxy also appears to primarily produce furniture—specifically bedroom and dining room furniture.  In addition to website excerpts that Skyview included in its voluntary submission, bill of lading data indicate that since 2017, Roxy has exported to the United States only furniture, including bedroom and dining room furniture.  C.R. 3.

Skyview also did not submit any production records from Rowenda Kitchen to show that the company completed the production of the WCV or fulfilled Skyview's orders with cabinet parts produced by Roxy, contrary to its claims.  Though Skyview submitted sample documentation purportedly from Rowenda Kitchen labeled as production schedules, these documents did not provide any proof of production.  Further, many of the documents submitted were lacking dates, signatures, or other indicia of being official or contemporaneous documentation.  Skyview did submit sample weekly production schedules for Roxy, but these documents did not demonstrate that Rowenda Kitchen actually fulfilled Skyview's orders with components produced by Roxy.

The information Skyview provided failed to overcome the substantial evidence demonstrating evasion, and thus CBP reasonably concluded that covered merchandise entered the United States through evasion, resulting in the avoidance of applicable AD/CVD deposits or other security.

### III.   CBP Reasonably Applied An Adverse Inference Against Rowenda Kitchen, Based On Rowenda Kitchen's Failure to Cooperate

Skyview also claims that CBP, in applying an adverse inference that the WCV merchandise was produced in China and was transshipped through Malaysia against Rowenda Kitchen, CBP also applied the adverse inference against Skyview.  Pl. Br. 20 -25.  According to Skyview, it did in fact cooperate with CBP's requests, and CBP cannot draw adverse inferences as a result of a different party's lack of cooperation.  *Id.* at 22-23.

Skyview's arguments, however are based on an incorrect premise: CBP *did not* apply an adverse inference against Skyview, although it did apply an adverse inference against Rowenda Kitchen.  C.R. 107 at 175 ("CBP is not making an adverse inference against Skyview in this case.").  Nevertheless, CBP appropriately applied an adverse inference with respect to Rowenda Kitchen.  Specifically, CBP determined that, based on Rowenda Kitchen's failure to cooperate to the best of its ability to CBP's requests for information, CBP would rely on evidence otherwise on the record regarding identification of the country of origin of merchandise Rowenda Kitchen shipped to the Importers.  C.R. 107 at 169.

CBP may apply an adverse inference against a party that "has failed to cooperate by not acting to the best of the party or person's ability to comply with a request for information…"  19 U.S.C. § 1517(c)(3)(A).  While there has been little case law under EAPA to date, general legal principles applicable to the AD/CVD statutes should apply here, including that an importer is responsible for providing the requesting agency with documents in response to requests for

information, and that critical documents—such as those establishing the origin of imported product—must be maintained in the ordinary course of business.  For example, in *Nippon Steel*, the United States Court of Appeals for the Federal Circuit explained that the "best of its ability" standard applicable to AD/CVD investigations and reviews "does not condone inattentiveness, carelessness, or inadequate record keeping."  *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003).  The Court held that, rather, the "best of its ability" standard "assumes that importers are familiar with the rules and regulations that apply to the import activities undertaken and requires that importers…take reasonable steps to keep and maintain full and complete records documenting the information that a reasonable importer should anticipate being called upon to produce…."

The same is true here, where CBP requested the most basic of information from Rowenda Kitchen—documentation establishing the origin of WCV imported into the United States.  CBP even expressly stated in the questionnaire that "{i}f you fail to cooperate and comply to the best of your ability with this request, CBP may apply an inference adverse to Importers or the Exporter's interests and select from among the facts otherwise available to make the determination as to evasion."  C.R. 80.  To give Rowenda Kitchen sufficient time to respond, CBP granted it *three* extensions to the deadline for response, and warned that CBP may apply adverse inferences if the company does not respond.  C.R. 89.  Rowenda Kitchen flatly refused to cooperate, and CBP thus reasonably used an inference that is adverse to the interests of that party in selecting from among the facts otherwise available to make a determination of evasion. *See All One God Faith, Inc. v. United States*, No. 20-00164, 2022 WL 3539511, at *9 (Ct. Int'l Trade Aug. 18, 2022) (finding that "CBP could apply adverse inferences in response to the

alleged manufacturers' failure to cooperate even if Consolidated Plaintiffs obtained accurate information regarding the original manufacturer and exporter of the Subject Entries.").

Notably, Skyview does not challenge the application of the adverse inference against Rowenda Kitchen.  Instead, Skyview argues that CBP's application of adverse inference negatively impacts Skyview and was thus not party specific, so it is therefore not permissible because Skyview has no leverage over Rowenda Kitchen.  Pl. Br. 24, 22 (citing *Mueller Comercial de Mexico S. De R.L. de C.V. v. United States*, 753 F.3d 1227, 1233-34 (Fed. Cir. 2014)).  Again, CBP did not in fact apply an adverse inference against Skyview due to Rowenda Kitchen's lack of cooperation.

Regardless, the record undermines Skyview's claim that it could not have induced Rowenda Kitchen to provide the requested information.  Skyview obtained select documents from Rowenda Kitchen and provided those to CBP in the June 7, 2021 voluntary submission. P.R. 155.  Skyview also admits that it received documentation from Rowenda Kitchen throughout the investigation.  Pl. Br. at 7-9.  Skyview offers no record evidence or argument suggesting that it was not in a position to induce Rowenda Kitchen's cooperation.

In any event, CBP did not make a finding that Skyview could have induced Rowenda Kitchen.  Rather, CBP's application of an adverse inference against Rowenda Kitchen—resulting in a finding that Rowenda did not manufacture WCV merchandise, but was a transshipment point for covered merchandise—had a collateral effect on Skyview, the importer responsible for deposit of AD/CVD duties.  Such effects are not impermissible, nor does Skyview claim they are.  *Mueller Comercial de Mexico*, 753 F.3d at 1236.  This aspect of CBP's decision should be affirmed.

**IV.    Because There Was No Question Regarding The Scope Of The Covered Merchandise, CBP Did Not Err By Declining To Refer This Matter To Commerce**

Skyview argues that CBP erred as a matter of law by failing to refer the issue of the scope of the covered merchandise to Commerce.  Pl. Br. 27; *see also* 19 U.S.C. § 1517(b)(1)(4).  According to Skyview, CBP erred in not making that referral to determine whether Malaysia was the country of origin, and in not conferring with Commerce to make that determination.  *Id.*  This argument is flawed for a number of reasons.

First, Skyview's argument, that if CBP makes an affirmative determination of evasion, CBP must refer the matter to Commerce, is based on a misconstruction of the statute.  The statutory provision on which Skyview relies—19 U.S.C. § 1517(b)—is to be used when CBP is unable to determine whether the imported merchandise is the type of merchandise covered by the scope of the order at issue.  When CBP is "unable to determine whether the merchandise at issue" is "merchandise that is subject to {an AD order or CVD order}," CBP shall "refer the matter to {Commerce} to determine whether the merchandise is covered merchandise."  *Id.* § 1517(b)(1)(4); § 1517(b)(4)(A).  To adopt Skyview's reading would essentially strip CBP of its authority to investigate evasion of AD/CVD duties because any such finding would be immediately transferred to Commerce.  Even interpreting the statute to require CBP to consult with Commerce would have the same absurd result, which the plain language of the statute does not support.

Second, even though CBP refers cases to Commerce when it cannot determine whether the merchandise is covered merchandise, CBP itself is still required to determine if the goods are subject to duties.  Specifically, "Customs has a statutory responsibility to fix the amount of duty owed on imported goods," and "{a}s part of that responsibility, Customs is both empowered and obligated to determine in the first instance whether the goods are subject to existing {AD} or

{CVD} orders." *Supreme Inc. v. United States*, 946 F.3d 1300, 1317 (Fed. Cir. 2020) (*en banc*) (internal citations omitted).  Congress granted CBP express authority to conduct investigations into whether covered merchandise entered into the United States through evasion.  *See* 19 U.S.C. § 1517(c)(1)(A).  CBP therefore is authorized to determine whether imported merchandise is "covered merchandise," and must only refer the matter to Commerce when CBP cannot make that particular determination.

Finally, there no question of whether the covered merchandise was subject to the AD/CVD orders, making Skyview's argument superfluous.  CBP determined, based on the full range of information on the record, that substantial evidence exists indicating the imported merchandise was manufactured in China and transshipped through Malaysia.  Skyview does not make any colorable argument that its WCV merchandise does not fall within the scope of the AD/CVD orders on WCV merchandise from China; its arguments should be rejected.

## V.     CBP Does Not Bear The Burden To Affirmatively Establish The Origin Of Imported Material; The Burden Rests With The Importer

Skyview argues that "CBP failed to make its determination based on 'substantial evidence' by erroneously shifting the burden of proof to and onus on Skyview in the *Review Determination*."  Pl. Br. 29.  Skyview additionally argues that it does not have to disprove any allegation by "substantial evidence," and that CBP must verify the information Skyview provides.  *Id.*  None of Skyview's arguments are persuasive.  EAPA does not provide for burden shifting; rather, Skyview must provide evidence, CBP must make a substantial evidence determination of evasion, and there is no requirement that CBP verify evidence.

According to Skyview, the importer does not need to disprove an evasion allegation by substantial evidence, but only needs to provide evidence sufficient to "fairly detract from the substantiality of the evidence."  Pl. Br. 29.  Apparently by merely evaluating the probative value

of the evidence Skyview provided, CBP impermissibly shifted the burden of proof.  *Id.*  But again, there is no burden shifting here.  Rather, the burden to establish entitlement to a reduced duty is born by the *respondent*, not the Government.  *See Allied Tube & Conduit Corp. v. United States*, 132 F. Supp. 2d 1087, 1094 (Ct. Int'l Trade 2001) ("As with all favorable adjustments to normal value or export price, respondent bears the burden of establishing both prongs of the test, and therefore, its entitlement to a duty drawback adjustment."); *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1040 (Fed. Cir. 1996) ("By failing to provide the detailed information and analysis necessary to establish entitlement to such an adjustment, {respondent} has failed to carry its burden of proof."); *Primary Steel, Inc. v. United States*, 834 F. Supp. 1374, 1383 (Ct. Int'l Trade 1993) ("The burden of creating a record from which the ITA could determine whether {respondent} was entitled to a duty drawback adjustment rested with {respondent}, not Commerce.").  And this Court has long held so for good reason: shifting the burden to the Government to affirmatively prove the origin of material before assigning duties would both frustrate the statutory directive and incentivize respondents to withhold information.  Moreover, as explained above, CBP's determination that evasion likely occurred is supported by substantial evidence.  Skyview's "burden shifting" argument simply repackages its challenge to the substantiality of the record evidence, which is insufficient to disturb CBP's findings.  *See Downhole Pipe & Equip., L.P. v. United States*, 776 F.3d 1369, 1376-77 (Fed. Cir. 2015) (declining to reweigh evidence, in light of the court's reviewing role).

Skyview also argues that CBP did not verify any of the documentation provided by Skyview and instead made conclusory statements regarding Skyview's level of knowledge of its full production chain.  Pl. Br. 30.  Skyview again misunderstands its burden; verification is not a system in which CBP conducts an independent search based upon a party's unsupported

assertions as to the origin of its material.  Rather, as this Court has held in the context of

AD/CVD verifications conducted by Commerce, verification is a process to confirm information

already received, not to discover new information.  *Hyundai Elec. & Energy Sys. Co. v. United*

*States*, 466 F. Supp. 3d 1303, 1317 (Ct. Int'l Trade 2020).  Through this process, CBP "checks,

reviews, and corroborates factual information previously placed on the record."  *Royal Brush*

*Mfg., Inc. v. United States*, 545 F. Supp. 3d 1357, 1371 (Ct. Int'l Trade 2021) (internal

quotations omitted).  Further, there is no requirement that CBP verify the information provided.

Rather, "CBP *may* in its discretion verify information in the United States or foreign countries

collected under § 165.23 as is necessary to make its determination."  19 C.F.R. § 165.25 (a)

(emphasis added).  CBP did not abuse its discretion by declining to conduct a verification.

Indeed, given that Skyview provided contrary information naming two different

producers of the merchandise—not to mention the piecemeal information it did provide and the

complete lack of information from Rowenda Kitchen—it is unclear what CBP even could have

verified.  CBP's determination not to verify the evidence provided by Skyview was not arbitrary

or capricious, nor an abuse of discretion.

## VI.    CBP Did Not Violate Any Due Process Right

According to Skyview, its due process rights were infringed upon because it did not have

the opportunity to fully participate in the investigation process.  Pl. Br. 32-33.  The specific

complaints Skyview raises are that CBP deprived Skyview of its due process rights because CBP

did not provide access to proprietary evidence obtained during the course of the agency's

investigation.  *See* Pl. Br. 33-34.  Skyview has no right to the extra-statutory procedures that it

urges the Court to impose.

First, Skyview cites *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 761-62

(Fed. Cir. 2012), for the proposition that an importer has a due process right to "notice and a

meaningful opportunity to be heard." Pl. Br. 32. Citing discussion in the rulemaking that led to

the CBP regulations implementing EAPA, Skyview also argues that CBP aims to make the

process as transparent as possible. *Id.* at 32 (citing *Investigation of Claims of Evasion of*

*Antidumping and Countervailing Duties*, 81 Fed. Reg. 56,477, 56,479 (Aug. 22, 2016)). A

reading of both sources, however, explains why Skyview's arguments are unpersuasive.

While true that importers have a due process right to notice and a meaningful opportunity

to be heard, that right does not entitle an importer to all information upon which CBP makes its

determination. Rather, due process requires that the importer be put on notice of particular

evidence or methodology CBP intends to use. *See PSC VSMPO-Avisma Corp*., 688 F.3d at 762.

Further, "procedural due process guarantees do not require full-blown, trial-type proceedings in

all administrative determinations." *Kemira Fibres Oy v. United States*, 18 C.I.T. 687, 694, 858

F. Supp. 229, 235 (1994). But due process does "forbid{ } an agency to use evidence in a way

that forecloses an opportunity to offer a contrary presentation." *Bowman Transp., Inc. v.*

*Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 289 n.4 (1974). Accordingly, CBP

"procedures must afford adequate opportunity for importers to respond to the evidence used

against them." *Royal Brush Mfg., Inc. v. United States*, 483 F. Supp. 3d 1294, 1306 (Ct. Int'l

Trade 2020).

Additionally, CBP regulations address the procedures for confidential documents. 19

C.F.R. § 165.4. These procedures include instructions for interested parties to request that

submissions receive confidential treatment and the requirement that submitters of such

confidential information submit a public version of the document, "contain{ing} a summary of

the bracketed information in sufficient detail to permit a reasonable understanding of the

substance of the information." 19 C.F.R. § 165.4(a)(2). The comments on the regulation state

that this section 165.4 "was included in order to protect business confidential information while at the same time ensuring transparency so that an alleged evader will be notified of the allegation and parties to the investigation can participate in the proceeding."  81 Fed. Reg. 56,477, 56,479. Thus, CBP must provide public summaries of proprietary information, and during the proceedings, the importer must raise due process concerns.  *Diamond Tools Tech. LLC v. United States*, 545 F. Supp. 3d 1324, 1343 (Ct. Int'l Trade 2021).

Notably, *Diamond Tools Tech*, provides a useful comparison. In that case, the importer did not dispute CBP's compliance with its own regulations to provide public summaries of information, the importer did not raise specific concerns—including due process concerns— during the proceedings, nor did it ask for disclosure of proprietary information or more detailed public summaries.  *Diamond Tools Tech. LLC*, 545 F. Supp. 3d at 1343.  As a result, the Court determined that CBP did not deny the importer a meaningful opportunity to participate in the administrative proceeding.  *Id.*

Importantly, the Court clarified that due process does not require an importer to have access to proprietary information during EAPA proceedings.  *Id.* ("To be clear, the court does not hold that Royal Brush is entitled to receive business confidential information.  Congress has not mandated that Royal Brush be afforded such access and Royal Brush has not shown that due process requires it.") (quoting *Royal Brush*, 483 F. Supp. 3d at 1308) (internal citations omitted). Here too, Skyview has made no allegation that it protested the due process procedures during the proceeding, nor is there any evidence on the record to indicate it did so.  *See* Pl. Br. 32-34. Skyview merely argues that CBP waited to release the confidential business information, and that CBP did not explain the differences between the photos during the investigation.  *Id.* 33. But had CBP explained the differences, it would have been revealing the confidential

information—which it is not permitted to do.  Rather, CBP followed its own regulations and released the proper information during the proceedings.  Skyview was on notice as to what information CBP would require for its investigation, and the type of evidence it was reviewing, and thus had plenty of opportunity to submit its own evidence.

Skyview also lacks any protected property interest in importing at a particular rate of duty or without CBP taking immediate action to protect the revenue.  A company does not have a constitutionally-protected interest in any rate of duty, an importation, or even engaging in international trade.  *See, e.g.*, *Int'l Custom Prods., Inc. v. United States*, 791 F.3d 1329, 1337 (Fed. Cir. 2015); *Norwegian Nitrogen Prods. v. United States*, 288 U.S. 294, 318 (1933); *see also A Classic Time v. United States*, 123 F.3d 1475, 1476 (Fed. Cir. 1997).  As a result, Skyview is entitled only what the statute or regulation prescribes.  *Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc*., 435 U.S. 519, 524 (1978); *Gilda Indus., Inc. v. United States*, 446 F.3d 1271, 1283 (Fed. Cir. 2006); *Cook v. United States*, 536 F.2d 365, 368 (Ct. Cl. 1976) ("It is axiomatic that due process guarantees no particular form of procedures." (citing *Mitchell v. W.T. Grant Co*., 416 U.S. 600, 610 (1974)).  CBP here followed the requirements of the regulation, and Skyview is not entitled to anything more.

Skyview maintains that it was deprived due process because CBP did not grant it access to proprietary information submitted by Masterbrand during the investigation.  Pl. Br. 33.  But Skyview does not have a due process right to a "particular form of procedures" over and above what CBP regulations already prescribe.  *Cook v. United States*, 536 F.2d at 368 (citation omitted).  Without establishing any due process right, the Court should decline Skyview's invitation to limit CBP's discretion in investigating EAPA allegations beyond the statutory and regulatory requirements.  *See, e.g.*, *MidContintent Nail Corp. v. United States*, 949 F. Supp. 2d

1247, 1278 (Ct. Int'l Trade 2013) ("{A}gencies with statutory enforcement responsibilities . . . enjoy broad discretion in allocating investigative and enforcement resources."); *Micron Tech., Inc. v. United States*, 117 F.3d 1386, 1394-95 (Fed. Cir. 1997) (explaining Commerce maintains "discretionary authority to determine the extent of investigation and information it needs").

As the Court held in *Royal Brush*, targets of investigations are not entitled to confidential information provided by potential victims or witnesses. *Royal Brush*, 483 F. Supp. 3d at 1308 ("To be clear, the court does not hold that Royal Brush is entitled to receive business confidential information. Congress has not mandated that Royal Brush be afforded such access and Royal Brush has not shown that due process requires it. However, Customs must ensure compliance with the public summarization requirements provided in its own regulations."). The statute envisions that EAPA will not be the only means of addressing allegations of evasion and that the United States could proceed under other criminal and civil provisions. 19 U.S.C. § 1517(h). Disclosing information provided in confidence at the initial stages of an investigation by potential victims or witnesses would prejudice any parallel proceedings and also could endanger the sources of this information. Indeed, even in the antidumping context, in which Congress directed Commerce to allow interested parties' representatives to access confidential information administratively, the Court allowed Commerce to withhold from interested parties a "Chinese Informant's business documents" because, under the statute and regulation, Commerce "may restrict access to limited information for parties subject to an administrative protective order if there is 'clear and compelling need to withhold' that information 'from disclosure'" *Max Fortune Indus. Ltd. v. United States*, 853 F. Supp. 2d 1258, 1265 (Ct. Int'l Trade 2012) (citing 19 U.S.C. § 1677f(c)(1) and 19 C.F.R. § 351.304(b)(2)(i)). Here too, CBP's regulations require that CBP withhold business confidential information and only supply the public summaries of such

information.  19 C.F.R. § 165.4.  Because CBP complied with its regulation, Skyview received the process it was owed, and its procedural due process argument should be rejected.

## VII.  CBP Relied Upon Credible And Probative Evidence, Not "Disallowed Hearsay," As Skyview Contends

Finally, Skyview contends that CBP relied on an affidavit and business confidential statements made by the corporate investigator, both of which constituted "disallowed hearsay" and which Skyview claims should be removed from the record.  Pl. Br. 36.  Neither of these documents are hearsay, nor did these findings in any way prejudice Skyview.

Under the Administrative Procedure Act (APA), hearsay evidence is "admissible up to the point of relevancy."  *Richardson v. Perales*, 402 U.S. 389, 410 (1971).  Agencies may consider hearsay according to its "truthfulness, reasonableness, and credibility," if the evidence is not irrelevant, immaterial or unduly repetitious.  *Veg-Mix, Inc. v. U.S. Dep't of Agriculture*, 832 F.2d 601, 606 (D.C. Cir. 1987) (quoting *Johnson v. United States*, 628 F.2d 187, 190–91 (D.C. Cir. 1980)).  The Federal Circuit has explained that hearsay evidence "may be used in administrative proceedings and may be treated as substantial evidence, even without corroboration, if, to a reasonable mind, the circumstances are such as to lend it credence."  *Hayes v. Dep't of Navy*, 727 F.2d 1535, 1538 (Fed. Cir. 1984).  Thus, Skyview's challenge to CBP's consideration of hearsay evidence is fatally premised.

The Government in fact routinely relies on factual information presented in sworn affidavits in investigations.  Moreover, the affidavits, and the information within, were not the only sources of evidence of evasion.  CBP also relied upon the import data submitted, the relevant information placed on the record by Skyview, and the lack of information from Rowenda Kitchen.  CBP has not, and is not, claiming that the information in the affidavit, alone, is adequate to justify a finding of reasonable suspicion of evasion, let alone a final finding of

substantial evidence of evasion.  Further, the affidavits are not irrelevant, immaterial or unduly repetitious, and Skyview has presented no evidence calling into question the truthfulness, reasonableness, and credibility of the affiants.  *See Veg-Mix, Inc.*, 832 F.2d at 606; Pl. Br. 36.

Moreover, much of the information in the declaration was public, and even as redacted, the declaration provided a reasonable understanding of the substance of the information. Further, the public discussion in CBP's notice of initiation and interim measures on which CBP relied contained additional information.  C.R. 14.  Skyview has not challenged the substance of the documents, but has only argued that because the declaration contains information unhelpful to Skyview, it must therefore be prejudicial to Skyview.  Pl. Br. 36.  Because the evaluation and weight of evidence is left to CBP as the fact-finder, Skyview's arguments do not demonstrate that CBP acted arbitrarily or capriciously by relying upon an affidavit CBP found to be relevant, material, and credible.

## **CONCLUSION**

For these reasons, we respectfully request that the Court deny Skyview's motion for judgment on the agency record, sustain CBP's evasion determination, and enter judgment for the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

/s/ Tara K. Hogan
TARA K. HOGAN
Assistant Director

OF COUNSEL:

Joseph F. Clark
Attorney, Enforcement and Operations
Office of the Chief Counsel
U.S. Customs and Border Protection

Eric Brekke
Attorney, Enforcement and Operations
Office of the Chief Counsel
U.S. Customs and Border Protection

September 19, 2022

/s/ Ioana Cristei
IOANA CRISTEI
Trial Attorney
U.S. Department of Justice,
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Tel:  (202) 305-0001

Attorneys for Defendant United States

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:      THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

————————————————————————

|  |  |
|---|---|
| SKYVIEW CABINET USA, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | )   Court No. 22-00080 |
| v. | ) |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| MASTERBRAND CABINETS, INC., | ) |
| | ) |
| Defendant-Intervenor. | ) |

————————————————————————

### **ORDER**

Upon consideration of plaintiff's motion for judgment on the agency record, defendant's response, and all other pertinent papers, it is hereby

ORDERED that plaintiff's motion is denied, and it is further

ORDERED that the final determination of the U.S. Customs and Border Protection is sustained in its entirety, and it is further

ORDERED that judgment is entered in favor of the United States.


Dated: _____       _____
      New York, NY                                 Judge

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to the Court's Standard Chambers Procedure ¶ 2(B)(1), I hereby certify that this brief contains 8,347 words. In making this certification, I have relied upon the word count function of the Microsoft Word processing system used to prepare this brief.

<u>/s/ Ioana Cristei</u>
Ioana Cristei