NON-CONFIDENTIAL VERSION

# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

<table>
<tr><td>

SKYVIEW CABINET USA, INC.,

                           Plaintiff,

         v.

UNITED STATES,

                          Defendant,

         and

MASTERBRAND CABINETS, INC.,

                        Defendant-Intervenor.

</td></tr>
</table>

Before:  Hon. Stephen Alexander Vaden,
                 Judge

Court No. 22-00080

<u>NON-CONFIDENTIAL VERSION</u>

Business Proprietary Information
Removed from Pages 1, 5-9

## <u>MASTERBRAND CABINETS, INC.'S RESPONSE BRIEF</u>

Timothy C. Brightbill, Esq.
Laura El-Sabaawi, Esq.

WILEY REIN LLP
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to MasterBrand Cabinets, Inc.*

Dated: October 3, 2022

## <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ............................................................................................... 1

II.     RULE 56.2 STATEMENT ................................................................................... 1

        A.    Administrative Decision Under Review....................................................1

        B.    Issues Presented........................................................................................1

III.    ARGUMENT ....................................................................................................... 3

        A.    CBP's Evasion Findings Were Supported by Substantial Evidence ........4

        B.    CBP Reasonably Applied an Adverse Inference Due to Rowenda
              Kitchen's Failure to Cooperate...............................................................10

        C.    Contrary to Skyview's Argument, CBP Did Not Improperly Make a
              Country-of-Origin Determination ...........................................................11

        D.    CBP Did Not Erroneously Shift the Burden of Proof to Skyview .........12

        E.    CBP Did Not Violate Skyview's Due Process Rights ............................13

        F.    CBP Did Not Unlawfully Rely on "Disallowed Hearsay"......................15

IV.     CONCLUSION................................................................................................... 16

Ct. No. 22-00080                                                    NON-CONFIDENTIAL VERSION

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Boomerang Tube LLC v. United States,*
   856 F.3d 908 (Fed.Cir. 2017)............................................................14

*Corus Staal BV v. United States,*
   502 F.3d 1370 (Fed.Cir. 2007)..........................................................14

*Dorbest Ltd. v. United States,*
   604 F.3d 1363 (Fed. Cir. 2010)..........................................................14

*Hayes v. Dep't of Navy,*
   727 F.2d 1535 (Fed. Cir. 1984)..........................................................15

*PAM, S.p.A. v. United States,*
   582 F.3d 1336 (Fed. Cir. 2009)............................................................6

*Royal Brush Mfg. v. United States,*
   545 F. Supp. 3d 1357 (Ct. Int'l Trade 2021) ......................................13

*Unemployment Comp. Comm'n of Alaska v. Aragon,*
   329 U.S. 143 (1946)............................................................................14

*Vietnam Finewood Company Ltd. v. United States,*
   466 F.Supp.3d 1273 (Ct. Int'l Trade 2020) ........................................12

*Woodford v. Ngo,*
   548 U.S. 81 (2006)..............................................................................14

**Statutes**

19 U.S.C. § 1517(b) ................................................................................11

19 U.S.C. § 1517(b)(1)(4) .......................................................................11

19 U.S.C. § 1517(b)(4)(A) .......................................................................11

19 U.S.C. § 1517(c)(3) .............................................................................10

19 U.S.C. § 1517(g)(2) ............................................................................10

28 U.S.C. § 2637(d) ................................................................................13

**Regulations**

19 C.F.R. § 165.25 .................................................................................................12, 13

19 CFR § 165.4 .........................................................................................................15

Ct. No. 22-00080

## I.    <u>INTRODUCTION</u>

On behalf of MasterBrand Cabinets, Inc. ("MasterBrand"), we respectfully submit the following response to the July 18, 2022 opening brief filed by Plaintiff Skyview Cabinet USA, Inc. ("Skyview").  *See* Br. in Supp. of Pl.'s Rule 56.2 Mot. for J. upon the Agency R. (July 18, 2022), ECF No. 22-1 ("Skyview Br.").  MasterBrand concurs with and adopts by reference the arguments in the September 19, 2022 response brief of Defendant United States.  *See* Def.'s Resp. in Opp'n to Pl.'s Mot. for J. on the Agency R. (Sept. 19, 2022), ECF No. 23 ("Def. Br.").

## II.    <u>RULE 56.2 STATEMENT</u>

### A.    <u>Administrative Decision Under Review</u>

The administrative determination challenged in this case is the U.S. Customs and Border Protection ("CBP") final affirmative determination in the Enforce and Protect Act ("EAPA") investigation regarding evasion concerning certain entries made by Plaintiff of wooden cabinets and vanities and components thereof ("WCV") from China.  Appx2975-2989, Appx3070-3085.

### B.    <u>Issues Presented</u>

**1.    Whether CBP's evasion determination was supported by substantial evidence, and thus was not arbitrary, capricious or an abuse of discretion, and was otherwise consistent with law?**

Yes.  CBP's findings that U.S. importer Skyview entered WCV subject to the antidumping and countervailing duty ("AD/CVD") orders on wood cabinets and vanities from China, without paying the required AD/CVD duties, thereby evading the orders, was supported by substantial evidence.  Such evidence included import data showing the shifting pattern of trade after the imposition of AD/CVD duties, bill of lading data showing a shift in the pattern for trade from the alleged Malaysian producer (Rowenda Kitchen) specifically, and certified foreign market research indicating that the [                                    ] admitted to transshipping Chinese WCV through Malaysia and that no extensive manufacturing operations occurred at the Rowenda Kitchen factory

1

in Malaysia.  Contrary to the extensive record evidence indicating evasion, the purported evidence

submitted by Skyview was untimely and riddled with inconsistencies and other deficiencies.  Thus,

with the significant evidence of evasion on the record, the failures to cooperate by Rowenda

Kitchen, and the substantial discrepancies in the information submitted by Skyview, CBP's

determination was supported by substantial evidence, and it was not arbitrary, capricious, an abuse

of discretion, or otherwise unlawful.

> **2.      Whether CBP appropriately followed EAPA procedures and lawfully applied adverse inferences in the investigation?**

Yes.  As fully explained in Defendant's response brief, CBP did not apply adverse inferences

to Skyview.  CBP did apply adverse inferences to Rowenda Kitchen due to its failure to cooperate

with the agency's investigation, and such application was appropriate and lawful under 19 U.S.C. §

1517(c)(3).

> **3.      Whether CBP failed to confer with Commerce as to whether the merchandise at issue was covered merchandise?**

No.   The statute only requires CBP to confer with Commerce where CBP is unable to

determine whether the merchandise at issue in the EAPA investigation is covered merchandise (*i.e.*,

merchandise covered by the scope of the relevant AD/CVD orders).  Here, it was abundantly clear

from the record that the merchandise was WCV of a type that fit the physical description of subject

merchandise in the AD/CVD orders.  As such, CBP was not required to confer with Commerce and

appropriately did not do so.

> **4.      Whether CBP properly applied the burden of proof?**

Yes.   Skyview's claims that CBP "wrongfully applied the standard of review" in the

underlying investigation have no merit.  In the face of substantial record evidence indicating that

Skyview's imports evaded AD/CVD duties, CBP requested that Skyview produce evidence that

would have been within its control with regard to the production and country of origin of the relevant WCV. Such informational requests were a proper exercise of CBP's investigative authority, and Skyview was able to provide no credible evidence in response to the requests. In EAPA investigations, CBP's burden is to issue a determination that is supported by substantial evidence, and it satisfied that burden here.

### 5.   Whether CBP violated Skyview's due process rights?

No. In addition to the responsive arguments provided by Defendant, Skyview failed to exhaust administrative remedies with regard to this claim, and the Court should therefore find the claim to be barred. In addition, Skyview mistakenly claims that it was entitled to access <u>all</u> evidence on the administrative record. In fact, CBP's EAPA regulations clearly outline a process for interested parties and for CBP to submit information onto the record that is kept confidential and not revealed to other interested parties, and Skyview was not entitled to access such information.

### 6.   Whether CBP properly followed EAPA procedures regarding admissible evidence, including alleged hearsay?

Skyview's claim that CBP's evasion findings are unlawful because they relied on hearsay evidence is incorrect. To the extent that any of the evidence relied upon in the EAPA investigation constituted hearsay, it was proper for CBP to consider it in the course of its administrative proceeding, as the Court of Appeals for the Federal Circuit has confirmed.

## III.   <u>ARGUMENT</u>

For the reasons discussed below, this Court should affirm CBP's final determination in the underlying EAPA investigating, finding that Chinese WCV products had been entered into the United States by means of evasion, including by importer Skyview. CBP's determination was supported by

substantial evidence, and the agency properly followed all applicable laws and regulations with regard to the conduct of EAPA proceedings.  As such, Skyview's claims should be rejected.

### A.    CBP's Evasion Findings Were Supported by Substantial Evidence

CBP's findings that U.S. importer Skyview entered WCV subject to the AD/CVD orders on wood cabinets and vanities from China, without paying the required AD/CVD duties, thereby evading the orders, was supported by substantial evidence.

First, import data on the record showed a massive increase in U.S. imports from Malaysia under the Harmonized Tariff Schedule numbers identified in the scope language after the imposition of provisional measures pursuant to Commerce's affirmative preliminary determination in the underlying countervailing duty investigation on Chinese imports.  At the same time, U.S. imports of the same merchandise from China decreased significantly.  *See* Appx80162. The magnitude of this shift in the pattern of trade, based on the HTS number under which the vast majority of wooden cabinets and vanities are believed to enter the United States, is shown in the table below.

| Value ($) | 2017 | 2018 | 2019 | Jan-Jul 2019 | Jan-Jul 2020 | 2018-2019 % Change | H1 '19-H1 '20 % Change |
|---|---|---|---|---|---|---|---|
| **Malaysia** | 221,107 | 131,958 | 49,779,234 | 2,400,781 | 153,394,901 | **+37,623%** | **+6,289%** |
| China | 1,059,654,040 | 1,315,097,622 | 755,909,183 | 647,083,508 | 44,344,993 | -43% | -93% |

The record further showed that, just when Malaysian exports of WCV to the United States skyrocketed, Malaysian <u>imports</u> of relevant merchandise <u>from China</u> increased substantially. Specifically, Malaysia import data indicated that imports into Malaysia from China under the relevant HS codes increased by 307% from 2018 to 2019, and by more than 550% in January through May 2020 from the same time period in 2019.  Appx80228-80231.  CBP cited this "{a}ggregate trade data showing surges in overall imports into Malaysia from China, and into the

BUSINESS PROPRIETARY INFORMATION
HAS BEEN DELETED

United States from Malaysia, of merchandise under tariff classifications containing subject merchandise, following the imposition of provisional measures as a result of the Department of Commerce's affirmative preliminary determination in its CVD investigation of WCV from China" in its Interim Measures and final determination of evasion.  Appx80790; Appx81615.

Further, the record showed that the entity from which Skyview was sourcing WCV (allegedly from Malaysia) – Rowenda Kitchen – had only started exporting WCV from Malaysia to the United States after Commerce's affirmative preliminary CVD determination.  Specifically, while MasterBrand pulled [        ] bill of lading data for shipments of WCV from Rowenda Kitchen to the United States specifying a starting date in 2017, the returned data only showed shipments from Rowenda Kitchen starting in August 2019, *i.e.*, the month in which provisional measures were first imposed pursuant to Commerce's affirmative preliminary determination in the underlying countervailing duty investigation.  Appx80087.  From that time until the date of MasterBrand's EAPA allegation, Rowenda Kitchen shipped approximately 4,144,343 kilograms of WCV from Malaysia to the United States, including to Skyview.  Appx80087-80088; Appx80113-80121.  CBP also cited this evidence in its Interim Measures and final determination.  Appx80790; Appx81615-81616.

In addition, the record contained a report from a foreign market researcher, to whom [

] expressly stated that Rowenda Kitchen works with Chinese producers and engages in transshipment of Chinese-origin WCV to the United States.  Specifically, the source stated that Rowenda Kitchen repackages products from China and that the company generally is able to unload the products from one container and repackage and reload the products into another container for export to the United States in [                    ].  After repackaging the Chinese WCV and reloading the container [

5

].   Appx80009;

Appx80069-80072.  The researcher further noted that there appeared to be no major manufacturing

operations occurring at the Rowenda Kitchen factory in Malaysia.  *See id.*  CBP also relied on the

affidavit setting forth this evidence and additional evidence, in both its interim measures and final

determination.  Appx80790; Appx81616.  Skyview's claims in its opening brief that certain

photographs it submitted for the record contradict the information in the foreign market researcher

report are unfounded.  It is impossible to tell where Skyview's photographs were taken or when.

*See, e.g.*, Appx80696.  The alleged "machinery at work in videos," which appear to have been

submitted by a [                    ], consist of a [

].  *See*

C.R. 108-117.[1]

    While MasterBrand provided this significant evidence demonstrating evasion, the alleged

producer of the WCV in Malaysia, Rowenda Kitchen, failed to respond to CBP's requests for

information, despite multiple opportunities to do so.  Appx81617.

    In sum, this record evidence indicating evasion outlined above constitutes "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion{,}" *PAM, S.p.A.*

*v. United States*, 582 F.3d 1336, 1339 (Fed. Cir. 2009) (citations omitted), and CBP's

determination that Skyview evaded the Wooden Cabinets and Vanities from China AD/CVD order

should be upheld as supported by substantial evidence.

    Skyview's argument that CBP's determination lacked substantial evidence is, at best,

unclear.  *See, e.g.*, Skyview Br. at 14-16.  In fact, Skyview provides a bullet point list of certain of

---

[1]    The cited [            ] were not contained in the Draft Joint Appendix circulated by
Plaintiff, and so Defendant-Intervenor cites their C.R. numbers from the confidential
administrative record filed by Defendant.

BUSINESS PROPRIETARY INFORMATION
HAS BEEN DELETED

CBP's findings, claiming that it shows that CBP was "fixated on production records."  *Id.* at 16-17.  If anything, what Skyview's selective quoting demonstrates is that the agency conducted an in-depth examination of the record evidence and concluded, for example, that documents submitted by Skyview "fail to rise to the level of production documents needed to substantiate Skyview's claim that the actual production of its WCV occurred in Malaysia{.}"  Appx3082; Skyview Br. at 16.  This is true.  For example, late in the investigation, Skyview claimed for the first time that its WCV were produced in Malaysia not by Rowenda Kitchen, but by a subcontractor, Roxy Heritage.   While Skyview submitted onto the record a sub-contractor cooperation contract between Rowenda Kitchen and Roxy Heritage, the contract does not specifically mention cabinets.  In fact, it does not specify at all the product that is covered by the agreement (and the record showed that Roxy Heritage appeared to primarily produce bedroom and dining room furniture, not WCV).  *See* Appx81571.  Thus, Skyview's laundry list of CBP findings – rather than show some sort of inappropriate "fixation" on production records (a topic which, given the point of the investigation, would appear reasonable to fixate on, in any case) – demonstrates that CBP thoroughly examined the record evidence and reasonably concluded that it supported a finding of evasion.

Skyview claims that it "connected the dots from purchase order information to the shipment{,}" and that CBP improperly disregarded its evidence.  Skyview Br. at 18.  But Skyview ignores that it failed to demonstrate the key point: that the products – for which it provided purchase order and shipment information – were <u>manufactured in Malaysia</u>.  Indeed, as CBP noted at various points throughout the investigation, "[

]."

Appx81602.

Ct. No. 22-00080                                                    NON-CONFIDENTIAL VERSION

Rather than demonstrating the Malaysian origin of its merchandise, Skyview provided confusing, contradictory and inadequately supported information.  For example, in its initial request for information ("RFI") response, in response to a question regarding whether and how Skyview verified Rowenda Kitchen's production capabilities prior to purchasing WCV from them, Appx80944, Skyview stated that a "local contact visited the manufacturer to verify their capacity, reviewed manpower, machines, and raw material. The manufacturer also certified that their products are solely made locally and government officials can produce country of origin for their products."  Appx80995-80996.  Skyview provided no supporting documentation, as was requested.  Appx80944.  Due to this and other deficiencies (such as the failure to respond to a number of CBP's requests for information, including with regard to the potential application of antidumping duties to the relevant merchandise), CBP issued Skyview a supplemental questionnaire.  *See* Appx81097-81099.  Among other requests, CBP asked Skyview the following: "Provide evidence to support that your local contact did visit the manufacturer and performed the tasks identified. Also, provide evidence that the manufacturer certified that their goods are solely made locally.  Finally, indicate how this certification was made to you."  [



] Appx81410-81412.  This evidence did not even establish that this contact visited Rowenda Kitchen's facility, let alone establish Skyview's verification of the country of origin of the relevant WCV (aside from identifying further [                    ]).  *See, e.g.*, Appx81602; Appx2981 ("Skyview only provided documentation that appears to refer to airline itineraries, none of which even makes mention of Rowenda Kitchen or its specific location, let alone its operations").  Skyview also failed to provide evidence that Rowenda Kitchen certified that the WCV were made

BUSINESS PROPRIETARY INFORMATION
HAS BEEN DELETED

in Malaysia, only stating that they could "provide affidavit if needed upon request" (when, of course, such evidence had already been requested).  Appx81407.  Thus, CBP reasonably concluded that "[                                                                    ]."  Appx81600.

In addition, in its response to CBP's initial RFI, Skyview identified Rowenda Kitchen (along with companies called Home Styler Furniture and Artz Master) as its supplier, and stated that "{t}here are no other contractors, lenders, exporter, distributors, resellers, or other persons involved in development, production, sales and distribution of products."  Appx80997.  *See also* Appx81600.  An [

].  Appx81601.  Then, months later, Skyview claimed for the first time that, actually, "{t}he cabinets in question were produced in Malaysia in conjunction with Roxy Heritage Furniture Manufacturer SDN. BHD."  Appx2509.  Apparently, Skyview contended that it was previously unaware of the identity of the actual manufacturer of its WCV.  As CBP found, "Skyview {previously} made no mention of Roxy at all, let alone any reference to Roxy's allegedly significant role in the production process."  Appx2984.

Even at that late point in the investigation when Skyview finally raised the issue of Roxy Heritage, the evidence submitted by Skyview did not establish that Roxy Heritage actually produced the WCV in Malaysia.  While Skyview included in its submission a sub-contractor cooperation contract between Rowenda Kitchen and Roxy Heritage, the contract does not mention cabinets.  Appx2562-2564.  In fact, it did not identify any product covered by the agreement. *Id.* And the record showed that Roxy Heritage appeared to primarily produce bedroom and dining room furniture.  *See* Appx2718-2729.  Consistent with its primary production, MasterBrand submitted onto the record bill of lading data indicating that since 2017, Roxy Heritage only

exported furniture, including bedroom and dining room furniture, to the United States, and no cabinets or vanities.  Appx2804, Appx2811-2824.

Despite its new claims regarding Roxy Heritage, the purported production schedule submitted by Skyview was a <u>Rowenda Kitchen</u> production schedule.  Appx2557.  Aside from being from the wrong entity, Rowenda Kitchen had repeatedly refused to respond to CBP's RFIs to it.  *See, e.g.*, Appx2121; Appx2257.  Having chosen not to cooperate with CBP directly, it was reasonable for CBP to determine that any evidence originating from Rowenda Kitchen at that point was untimely (even if it had been credible evidence, which it was not).  Appx2983.

With the significant evidence indicating evasion on the record, the failures to cooperate by the alleged foreign manufacturer, and the substantial deficiencies and discrepancies in the information submitted by Skyview, there is no basis for a finding that CBP's determination was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 19 U.S.C. § 1517(g)(2).

### B. CBP Reasonably Applied an Adverse Inference Due to Rowenda Kitchen's Failure to Cooperate

In its opening brief, Skyview incorrectly asserts that "CBP unlawfully applied adverse inferences against Skyview{.}"  Skyview Br. at 20.  CBP in fact clearly explained in its final determination: "CBP is not making an adverse inference against Skyview in this case."  Appx2987. To the contrary, CBP applied an adverse inference to Rowenda Kitchen, Appx2981, due to its failures to cooperate with the agency's investigation.  *See* Appx2801.  As set forth fully in Defendant's response brief, which Defendant-Intervenor incorporates by reference here, CBP's application of adverse inferences to Rowenda Kitchen was appropriate and lawful under 19 U.S.C. § 1517(c)(3), even if it had a collateral impact on Skyview.  *See* Def. Br. at 17-19.  In fact, Rowenda Kitchen's

repeated refusals to supply any information to CBP left the agency with no reasonable choice but to apply an adverse inference.

### C.    Contrary to Skyview's Argument, CBP Did Not Improperly Make a Country-of-Origin Determination

Skyview alleges that CBP improperly made a country-of-origin determination without conferring with Commerce.  *See* Skyview Br. at 25.  Skyview's argument is baseless and misconstrues the statute.

Citing 19 U.S.C. § 1517(b),[2] Skyview argues that CBP failed to make a statutorily required referral to Commerce.  The relevant statutory section states: "If the Commissioner receives an {EAPA} allegation . . . and is unable to determine whether the merchandise at issue is covered merchandise, the Commissioner shall—(i) refer the matter to {Commerce } to determine whether the merchandise is covered merchandise . . . ."  19 U.S.C. § 1517(b)(4)(A).  In this case, CBP was <u>fully able</u> to determine that the merchandise at issue was covered by the relevant AD/CVD orders, and, thus, no referral to Commerce was required.  Rather, it was abundantly clear from the record that the merchandise under investigation was WCV of a type that fit the physical description of subject merchandise in the AD/CVD orders on Wooden Cabinets and Vanities.  Skyview's argues not that CBP was unable to determine whether the products are issue were WCV, but that CBP was unable to determine whether the products were of Chinese origin or Malaysian origin.  That is not the question that 19 U.S.C. § 1517(b)(4)(A) is intended to address.  In fact, the question as to the correct country of origin for a given import is at issue in nearly every EAPA investigation; as CBP is the agency with authority to make EAPA findings, it is nonsensical that CBP would be required to refer such questions to Commerce.  *See also* Def. Br. at 20 ("To adopt Skyview's

---

[2]    Skyview cited 19 U.S.C. § 1517(b)(1)(4), but presumably intended to cite 19 U.S.C. § 1517(b)(4)(A).

reading would essentially strip CBP of its authority to investigate evasion of AD/CVD duties because any such finding would be immediately transferred to Commerce . . . {an} absurd result . . . .").

Defendant-Intervenor notes that Skyview also cites *Vietnam Finewood Co. v. United States*, 466 F. Supp. 3d 1273 (Ct. Int'l Trade 2020), for the proposition that "{a} referral is required if at <u>any point after receipt of an allegation</u>, CBP cannot determine whether the merchandise described in an allegation is properly within the scope of an antidumping or countervailing duty order." Skyview Br. at 25-26. *Vietnam Finewood* is inapposite to this case. There, the Court was considering the plaintiffs' assertion that CBP's scope referral to Commerce was untimely, and the Court used the language quoted above in explaining that there is no explicitly stated deadline by when CBP must refer a matter to Commerce for a scope determination. *Vietnam Finewood*, 466 F. Supp. 3d at 1283. The Court was not discussing the factual circumstances under which a referral to Commerce would be appropriate or required, but simply the timing of any such referral, which is not at issue here.

### D.    CBP Did Not Erroneously Shift the Burden of Proof to Skyview

Skyview again errs in arguing that CBP improperly shifted the burden of proof to Skyview in the underlying investigation. Skyview Br. at 28-30.

Skyview begins this argument by citing 19 C.F.R. § 165.25, which states that, "{p}rior to making a determination {as to evasion}, CBP may in its discretion verify information in the United States or foreign countries collected {during the investigation} as is necessary to make its determination." Skyview Br. at 28. Skyview's point is not readily ascertainable. CBP did not find verification to be required in the underlying investigation and so did not conduct verification. If Skyview intends to argue that CBP was required to verify it and did not do so, any such argument

would fly in the face of the regulatory language, which clearly states that CBP "may," "in its discretion," decide to conduct verification, if necessary.  *See* 19 C.F.R. § 165.25.

Skyview next claims that CBP "wrongfully applied the standard of review" in the underlying investigation by effectively asking the importer for too much evidence, *i.e.*, "'actual' production documentation by either Rowenda or Roxy and . . . 'actual' country of origin documentation . . . ."  Skyview Br. at 29.  If, in investigating evasion, CBP is not permitted to request that importers provide "actual" production documentation nor "actual" country of origin documentation, it is unclear what evidence CBP <u>would</u> be permitted to request.  Skyview makes no credible arguments here with regard to the burden of proof, but rather reiterates its "substantial evidence" arguments.  In fact, in the face of substantial record evidence indicating that Skyview's imports evaded AD/CVD duties, Skyview was able to produce no credible evidence of its own.  In EAPA investigations, CBP's "burden {is to} issu{e} a determination that is supported by substantial evidence," and it satisfied that burden here.  *Royal Brush Mfg., Inc. v. United States*, 545 F. Supp. 3d 1357, 1373 (Ct. Int'l Trade 2021).

### E.   CBP Did Not Violate Skyview's Due Process Rights

Skyview further claims that CBP violated its due process rights "because CBP failed to notify Skyview of detracting evidence and because CBP failed to consider detracting evidence and because CBP did not release business confidential information{.}"  Skyview Br. at 30.  Defendant addresses Skyview's claims at length, and Defendant-Intervenor incorporates that response by reference and adds two further points, below.  *See* Def. Br. at 23-28.

First, Skyview failed to exhaust its administrative remedies with regard to this claim, and the Court should therefore reject Skyview's due process arguments.   *See* 28 U.S.C. § 2637(d).  For example, in Skyview's "written arguments" to CBP, it never raised the issue of CBP's reliance

on confidential information, even though, by that point, it was evident that the agency had relied on confidential information in making its interim evasion determination.  *See* Appx2877-2903; Appx1904.  "Written arguments" in an EAPA investigation are akin to case briefs to Commerce in an AD/CVD investigation.  In fact, CBP's regulations specify that parties' written arguments must "contain <u>all</u> arguments that are relevant to the determination as to evasion . . . ." 19 C.F.R. § 165.26(a)(1) (emphasis added).  Yet Skyview did not raise the argument to the agency that it now raises to the Court.  Skyview never claimed, for example, that MasterBrand's public summaries of its submitted confidential information were inadequate.

"{A}s a general rule . . . courts should not topple over administrative decisions unless the administrative body not only has erred, <u>but has erred against objection made at the time appropriate under its practice</u>." *Woodford v. Ngo*, 548 U.S. 81, 111 (2006) (internal quotation omitted). *Dorbest Ltd. v. United States*, 604 F.3d 1363, 1375 (Fed. Cir. 2010).  Indeed, a "reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the {agency} of an opportunity to consider the matter, make its ruling, and state the reasons for its action." *See Unemployment Comp. Comm'n of Alaska v. Aragon*, 329 U.S. 143, 155 (1946).  The Court of Appeals for the Federal Circuit ("CAFC") has stated that the U.S. Court of International Trade generally takes a "strict view" of the exhaustion requirement. *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007).  The CAFC explained that the word "shall" in the statute "indicates a congressional intent that, absent a strong contrary reason, the court should insist that parties exhaust their remedies before the pertinent administrative agencies." *Id.  See also Boomerang Tube LLC v. United States*, 856 F.3d 908, 913 (Fed. Cir. 2017).  None of the exceptions to the exhaustion doctrine apply here.  As such, the Court should reject Skyview's claim on the basis of a failure to exhaust administrative remedies.

Second, Skyview states that "{t}here is no doubt that Skyview was entitled to all evidence that CBP placed into the record{,}" before referring to confidential information submitted by MasterBrand.  Skyview Br. at 31, 33.  But Skyview was <u>not</u> entitled to <u>all</u> evidence on the record.  Rather, CBP's EAPA regulations clearly outline a process for interested parties and for CBP to submit information onto the record that is kept confidential and not revealed to other interested parties.  *See* 19 C.F.R. § 165.4.  Skyview was thus not entitled to access confidential information (such as photographs taken by an investigator), only public summaries of such information.  Yet, even in its brief to the Court, Skyview fails to specifically identify any information for which it alleges the public summary was inadequate.

### F.       CBP Did Not Unlawfully Rely on "Disallowed Hearsay"

Finally, Skyview inaccurately claims that CBP's evasion findings are unlawful because the agency "unlawfully relied on disallowed hearsay in its substantial evidence determination{.}" Skyview Br. at 34.  Skyview argues that "{h}earsay is inadmissible at trial unless a federal statute, Federal Rule of Evidence, or other rule prescribed by the Supreme Court provides otherwise{,}" *id.*, before acknowledging that, in administrative proceedings agencies typically can consider hearsay evidence.  In fact, the CAFC has explicitly held that hearsay evidence "may be used in administrative proceedings and may be treated as substantial evidence, even without corroboration, if, to a reasonable mind, the circumstances are such as to lend it credence." *Hayes v. Dep't of Navy*, 727 F.2d 1535, 1538 (Fed. Cir. 1984).

Thus, Skyview's claim that the foreign investigator report submitted by MasterBrand is "certainly disallowed hearsay and should {be} removed from the Administrative Record and not be considered by CBP" is baseless.  Skyview Br. at 36.  Skyview has no legitimate claim that the

report, accompanied by a sworn affidavit, was not relevant or reliable.  CBP reasonably found the report probative and properly relied on it, in part, in making its final determination of evasion.

## IV.    <u>CONCLUSION</u>

For the reasons detailed above, Petitioner respectfully submits that this Court should affirm the final determination of U.S. Customs and Border Protection in the underlying Enforce and Protect Act investigation.

Respectfully submitted,

*/s/ Timothy C. Brightbill*
Timothy C. Brightbill, Esq.
Laura El-Sabaawi, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to MasterBrand Cabinets, Inc.*

Dated: October 3, 2022

CERTIFICATE OF COMPLIANCE

Pursuant to the Court's Scheduling Order (May 18, 2022), ECF No. 21, the undersigned certifies that this brief complies with the word limitation requirement. The word count for MasterBrand Cabinets, Inc's brief, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2019), is 4,562 words.

*/s/ Timothy C. Brightbill*
(Signature of Attorney)

Timothy C. Brightbill
(Name of Attorney)

MasterBrand Cabinets, Inc.
(Representative Of)

October 3, 2022
(Date)