Slip Op. No. 23-91

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| SKYVIEW CABINET USA, INC.,<br><br>*Plaintiff,*<br><br>v.<br><br>UNITED STATES,<br><br>*Defendant,*<br><br>*and*<br><br>MASTERBRAND CABINETS, INC.,<br><br>*Defendant-Intervenor.* | Before:  Stephen Alexander Vaden,<br>Judge<br><br>Court No. 1:22-cv-00080 |

### OPINION

[Sustaining Customs' Final Determination of evasion.]

Dated:  June 20, 2023

*Kyl J. Kirby*, Attorney and Counselor at Law, of Fort Worth, TX, for Plaintiff Skyview Cabinet, Inc.

*Ioana Cristei*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant United States.  With her on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General; *Patricia M. McCarthy*, Director; and *Tara K. Hogan*, Assistant Director, Commercial Litigation Branch.  Of counsel on the brief were *Joseph F. Clark* and *Eric Brekke*, Attorneys, Enforcement and Operations Office of the Chief Counsel, U.S. Customs and Border Protection.

*Timothy C. Brightbill*, Wiley Rein LLP, of Washington, DC, for Defendant-Intervenor MasterBrand Cabinets, Inc.  With him on the brief was *Laura El-Sabaawi*.

**Vaden, Judge:**  Plaintiff Skyview Cabinet, Inc. (Skyview) comes before the Court to challenge U.S. Customs and Border Protection's (CBP or Customs) Final Determination of Evasion (Final Determination) and the agency's subsequent Administrative Review affirming that determination (the Administrative Review). *See Notice of Determination as to Evasion, EAPA Cons. Case Number 7553* (Sep. 16, 2021); Admin. Rev. Case Number H321677 (Jan. 28, 2022), J.A. at 3,071-086, ECF No. 32.  In its Motion for Judgment on the Agency Record, Plaintiff argues that Commerce's finding of evasion was unlawful insofar as it failed to comply with various procedural requirements set out by the Enforce and Protect Act (EAPA), 19 U.S.C. §1517.  *See generally* Pl.'s Br., ECF No. 30.  Plaintiff alleges that Customs did not support its findings with substantial evidence, unlawfully applied adverse inferences, failed to confer with Commerce as the statute requires, violated Skyview's due process rights, shifted the burden of proof onto Skyview contrary to the statute, and unlawfully admitted hearsay into evidence.  *Id.* at 11-36.  For the reasons set forth below, Plaintiff's Motion for Judgment on the Agency Record is **DENIED**; and Customs' determinations are **SUSTAINED**.

## BACKGROUND

The Department of Commerce (Commerce) issued antidumping and countervailing duty orders on wooden cabinets and vanities (WCV) from China (Orders) on April 21, 2020.  *Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China:  Antidumping Duty Order*, 85 Fed. Reg. 22,126

(Apr. 21, 2020); *Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Countervailing Duty Order*, 85 Fed. Reg. 22,134 (Apr. 21, 2020).   On October 13, 2020, MasterBrand Cabinets, Inc. (MasterBrand) filed an allegation of evasion and request for an investigation under EAPA against Skyview. MasterBrand Allegation 1-14, Exs. 1-9, J.A. at 80,157-243, ECF No. 33.  MasterBrand also included a request that certain information, such as photographs and the identity of some persons named in the allegation, be treated as confidential under 19 C.F.R. § 165.4(a).  *Id.* at 12.  Pursuant to the regulation, MasterBrand also submitted a public version of its allegation, including a summary of the redacted content.  *Id.* MasterBrand alleged that Skyview had "imported Chinese cabinets subject to the Orders from Rowenda Kitchen . . . that [had] been transshipped from China through Malaysia and to the United States to evade the Orders."  *Id.* at 1-2.  MasterBrand further alleged that the subject imports had not been manufactured by Rowenda Kitchen, as Skyview claimed, but that Rowenda Kitchen was merely a transshipment facility.  *Id.*  To support its allegations, MasterBrand provided Customs with trade and shipping data illustrating significant changes in the shipping patterns of merchandise covered by the Orders since Commerce imposed those tariffs.  *Id.* at 6. The data showed a decrease in Chinese wooden vanity and cabinet imports of 37% from 2018 to 2019 and 64% from January to July 2020 with a simultaneous increase of 81% from 2018 to 2019 and 164% from January to July 2020 of imports of the subject merchandise from Malaysia to the United States.  *Id.* at 6-8, Exs. 6-7.  It also showed that there had been a notable increase in the amount of covered merchandise

being shipped from China into Malaysia during the relevant time. *Id.* at 8. To further support its allegation, MasterBrand included bill of lading data from Rowenda Kitchen's imports from 2019-2020, showing that the company had only begun importing wooden vanities and cabinets the same month that Commerce had imposed provisional measures during the dumping investigation. *Id.* at 8, Ex. 3.

Finally, MasterBrand provided data collected by a third-party market researcher who visited the alleged Rowenda Kitchen manufacturing facility in Malaysia. The researcher collected statements from Rowenda Kitchen's owners and employees attesting to the limited capabilities of the facility and describing it as a transshipment operation. *Id.* at 9-10, Ex. 9. Photos of the alleged manufacturing facility included in the researcher's report showed that "there was only minor equipment in the factory, such as tables for holding doors or paint sprayers, but no equipment that indicated that there was manufacturing or significant assembly of cabinets or cabinet parts." *Id.* at 10, Attach. A. Although the photos were redacted as business confidential, the narrative descriptions of what those photos depicted were included in the public version. MasterBrand Allegation at 10, J.A. at 1,163, ECF No. 32 (public version of MasterBrand's allegation providing detailed narrative description of what the redacted photos depict and how they support the allegation of evasion). On October 22, 2020, Customs acknowledged receipt of MasterBrand's "properly filed EAPA allegation," and on November 13, 2020, it initiated an investigation of Skyview under the authority of 19 U.S.C. §1517(b)(1). Initiation Memo at 1-4, J.A. at 80,421-423, ECF No. 33.

On November 24, 2020, Customs sent Skyview a CF-28 Request for Information regarding the subject entries.  CF-28 Req., J.A. at 80,451-454, ECF No. 33.  Skyview responded to that request with documentation regarding the origin of the merchandise in question on December 18, 2020; January 28, 2021; and February 7 and 9, 2021.  Skyview RFI Resp., J.A. at 80,514-529, 80,666-673, 80,694-768, ECF No. 33.  In its responses, Skyview provided Customs with information about and photographs of the alleged Malaysian manufacturer, Rowenda Kitchen.  *Id.*  On February 19, 2021, Customs sent Skyview a Notice of Initiation stating that, "based on a review of available information, CBP has determined that there is reasonable suspicion of evasion" and informing the company that it would be imposing interim measures against it.  Notice of Initiation at 2, J.A. at 80,789, ECF No. 33.  Customs then sent Skyview a request for information related to the agency's country-of-origin analysis on March 15, 2021, to which Skyview responded on April 8, 2021.  Req. for Information (RFI) at 1-4, J.A. at 80,939-953, ECF No. 33; Skyview RFI Resp. at 1-99, J.A. 80,994-81,092, ECF No. 33.  In its response, Skyview stated that its "local contact visited the [Malaysian] manufacturer to verify their capacity" and that "the manufacturer also certified that their products are solely made locally and government officials can produce country of origin for their products."  Skyview RFI Resp. at 3-4, J.A. at 80,996-997, ECF No. 33.

On March 15, Customs sent a request for information to the alleged manufacturer, Rowenda Kitchen, stating that the deadline for a response was March 29, 2021.  Final Determination, J.A. at 81,615, ECF No. 33.  After receiving no

response from Rowenda Kitchen, Customs offered to extend the deadline to April 7,

2021.  *Id.*  Rowenda Kitchen responded by stating that it had not received the initial

communication, suggesting that it may have gone to its "junk mail" folder.   It

requested an additional extension.  *Id.*  Customs granted the request, extending the

deadline to April 12, 2021.  *Id.*  Customs then issued a supplemental information

request to Skyview on April 12, 2021.  Suppl. RFI, J.A. at 2,250-256, ECF No. 32.  In

that request, Customs asked for additional information about Skyview's "local

contact" and verification of that person's visit to the alleged Malaysian manufacturer.

*Id.* at 2,255.  Customs also identified numerous questions from the prior request that

Skyview failed to answer and repeated its need for the missing information.  *Id.*

Skyview provided a timely response to the supplemental request on April 23, 2021.

Skyview Suppl. RFI Resp. at 1-36, J.A. at 81,407-442, ECF No. 33.   However,

Skyview's response again failed to provide the missing requested information.  Final

Determination, J.A. at 81,618 n.36, ECF No. 33.

On June 7, 2021, Skyview voluntarily submitted additional information for the

agency's review.   Skyview Voluntary Submission, J.A. at 2,504-530, ECF No. 32.

Skyview modified its claims and now presented evidence for the first time that the

subject imports had been manufactured by or in conjunction with a different

company, Roxy Heritage Furniture Manufacturer SDN ("Roxy").  *Id.* at 2,516.  Along

with the new documents, Skyview offered the following explanation:

> Skyview has made progress in documenting a complicated
> supply chain of Rowenda Kitchen . . . .  Even with the
> extension, there are [*sic*] not sufficient time to complete the
> process.  However, Skyview  has  learned  additional

> information pertaining to its relationship with Rowenda as
> provided Kian Hong Ong. The cabinets in question were
> produced in Malaysia in conjunction with Roxy Heritage
> Manufacturer SDN. BHD. as demonstrated in the
> attached.

*Id.* at 2,507.  Meanwhile, despite numerous requests for information and extensions

of deadlines, Rowenda Kitchen failed to respond to any of Customs' inquiries or

provide any documentation whatsoever.  Final Determination, J.A. at 81,615, ECF

No. 33.

On June 24, 2021, MasterBrand submitted comments on Skyview's voluntary

submission, arguing that Customs should disregard that evidence and instead "rely

on adverse inferences in making a final determination of evasion" because the alleged

manufacturer, Rowenda Kitchen, "did not submit a response to CBP's request for

information and has refused to participate with the agency in this investigation."

MasterBrand Comments at 2, J.A. at 81,515, ECF No. 33.  Skyview then submitted

its written case brief, responding to the allegations made by MasterBrand and to

Customs' Notice of Initiation.  Skyview Agency Case Br., J.A. at 2,878-904, ECF No.

32.  MasterBrand submitted its case brief on July 1, 2021.  MasterBrand Agency Case

Br. at 1, J.A. at 81,555-581, ECF No. 33.  On July 15, 2021, pursuant to 19 C.F.R. §

165.2(b), both parties submitted responses to the other party's arguments.  Skyview

Resp. Br., J.A. at 2,907-933, ECF No. 32; MasterBrand Resp. Br., J.A. 2,936-962, ECF

No. 32.

On September 16, 2021, CBP published its Final Determination, finding that

there was "substantial evidence" supporting the allegations of evasion.  *See* Final

Determination, J.A. at 81,612-626, ECF No. 33. The Final Determination explained that "[t]hose changes in general country trade patterns and in the specific shipment activity of Rowenda Kitchen, and the statements in the affidavit . . . that observed that company's facilities" coupled with the fact that "none of the Importers provided the requested production records . . . is applicable in CBP's final determination with regard to whether substantial evidence exists of evasion." *Id.* at 81,617. Customs explained that "Rowenda Kitchen's failure to cooperate and comply to the best of its ability to CBP's information requests leads CBP to rely on evidence otherwise on the record regarding identification of the country of origin of merchandise Rowenda Kitchen shipped to the Importers." *Id.* In its analysis of the evidence offered by Skyview, Customs found that "the existence of various discrepancies and omissions with respect to the RFI responses . . . also call into question the accuracy of information provided[.]" Final Determination, J.A. at 81,618, ECF No. 33.

Customs specified the discrepancies that the agency observed in Skyview's submissions in a related footnote. *Id.* at n.36. First, Customs recalled that Skyview's initial response claimed that the company had sent a "local contact" to visit the manufacturer in order to "verify their capacity" and review their "manpower, machines, and raw material[s]." Skyview RFI Resp. at 3-4, J.A. 80,996-997, ECF No. 33. However, when Customs requested evidence of the alleged visit in its supplemental questionnaire, Skyview "only provided documentation that appears to refer to airline itineraries, none of which even mention Rowenda Kitchen or its specific location, let alone its operations." Final Determination, J.A. at 81,618 n.36,

ECF No. 33; *see* Skyview Suppl. RFI Resp. at Attach. 1, J.A. 81,409-413, ECF No. 33.

Second, Customs highlighted that, in its initial March 15, 2021 request, it had asked

Skyview for various accounting documents and records from 2019 and 2020; Skyview

ignored that request.  Final Determination, J.A. at 81,618 n.36, ECF No. 33.  When

Customs repeated its records request on April 12, 2021, Skyview offered

documentation that was "unresponsive to CBP's request[,]" including an unsigned tax

return that was unverifiable.  Final Determination, J.A. at 81,618-619 n.36, ECF No.

33; *see* Skyview Suppl. RFI Resp. at Attach. 4, J.A. at 81,431-434, ECF No. 33.

Finally, Customs noted that, in its initial response, Skyview also failed to provide a

requested purchase order and, after subsequent requests, sent what "appears to be a

spreadsheet" including only "two columns of data for which Skyview provided no

explanation."  Final Determination, J.A. at 81,619 n.36, ECF No. 33; *see* Skyview

Suppl. RFI Resp. at Attach. 6, J.A. 81,435-436, ECF No. 33.  Although the agency

observed that "it might be appropriate to apply adverse inferences to Skyview given

the potentially fraudulent 'certifications' submitted by its counsel," it stated that

"CBP is not making an adverse inference against Skyview in this case."  Final

Determination, J.A. at 81,624, ECF No. 33.  Instead, CBP chose to apply adverse

inferences solely against the unresponsive alleged manufacturer, Rowenda Kitchen.

*Id.*

Skyview made a timely request for administrative review of the Final

Determination.  *See* 19 U.S.C. § 1517(f)(1); 19 C.F.R. §165.41(a); Skyview Req. for

Admin. Rev. at 1, J.A. at 2,994, ECF No. 32.  In its request, Skyview argued that the

Final Determination should be reversed because (1) Skyview had provided adequate
evidence to support its claim that the imported merchandise had been manufactured
in Malaysia but that "CBP disregarded evidence that Skyview submitted throughout
the EAPA investigation"; (2) the application of adverse inferences against Skyview
was unlawful; and (3) any outstanding questions regarding the country-of-origin
analysis should have been referred to Commerce.  Skyview Req. for Admin. Rev. at
3-4, J.A at 3,002-003, ECF No. 32.  MasterBrand submitted its response on November
16, 2021, arguing that the Final Determination was in compliance with the statute
and should therefore be affirmed.  MasterBrand Resp. to Req. for Admin. Rev. at 1-
25, J.A. at 81,628-659, ECF No. 33.  On January 28, 2022, Customs' Office of Rules
and Regulations affirmed the Final Determination based on its determination that
"the evidence of evasion here is cumulative and substantial" and "Skyview failed to
provide adequate and reliable evidence that the WCV it imported into the United
States were manufactured in Malaysia."  Admin. Rev. at 8, J.A. at 3,078, ECF No. 32.

Skyview timely filed the present action on March 10, 2022, challenging
Customs' affirmative Final Determination of evasion and the administrative review
affirming that determination.  *See* Compl. ¶¶ 26-75, ECF No. 2.  In its brief before
this Court, Skyview alleged that Customs failed to support its Final Determination
with substantial evidence, unlawfully applied an adverse inference against it, failed
to confer with Commerce in its country-of-origin analysis, unlawfully shifted the
burden of proof onto Skyview, violated Skyview's due process rights, and permitted
prohibited hearsay evidence onto the record.  Pl.'s Br. at 11-37, ECF No. 30.  The

Government submitted its response brief on October 2, 2022; and Defendant-Intervenor MasterBrand submitted a response brief in support of Customs' final determination on October 5, 2022.  Def. Resp. Br., ECF No. 25; Def. Int. Resp. Br., ECF No. 27.

The Court held oral argument on March 30, 2023.  ECF No. 39.  In particular, the Court asked what factors Customs must consider in deciding whether and how to verify record evidence and what factors the agency considered in this case when making that determination.   Oral Arg. Tr. at 19:6-25–20:1-4, ECF No. 40.  Counsel for Skyview conceded that his client does not dispute the accuracy of the aggregate data MasterBrand proffered and on which Customs relied in its analysis.  *Id.* 42:23-25–43:1-10.  Skyview also agreed that the merchandise in question would be in scope if manufactured in China, leaving the only contested issue whether the goods were of Chinese or Malaysian origin.  *Id.* at 43:11-19.   Counsel finally confirmed that Skyview's "local contact" who had been sent to visit the Malaysian manufacturing facility provided no work product supporting the claim that the facility manufactured the merchandise in question.  *Id.* at 52:3-25–53:1-13.

## JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction pursuant to 19 U.S.C. § 1517(g) and 28 U.S.C. § 1581(c).   Under the Enforce and Protect Act, the reviewing court must examine Customs' final determination, *see* 19 U.S.C. § 1517(c), and administrative review, *see id*. § 1517(f).  *Id.* § 1517(g) (providing for court review of both determinations).  In its review of Customs' determinations, the Court examines "whether any determination,

finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 1517(g)(1)-(2). Agency action constitutes an abuse of discretion "where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005). Where the agency "offers insufficient reasons for treating similar situations differently," such actions are arbitrary. *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001) (quoting *Transactive Corp. v. United States*, 91 F.3d 232, 237 (D.C. Cir. 1996)).

In reviewing agency action, it is "the duty of the courts to determine in the final analysis and in the exercise of their independent judgment, whether on the whole record the evidence in a given instance is sufficiently substantial to support a finding, conclusion, or other agency action as a matter of law." *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351-52 (Fed. Cir. 2006) (citations omitted). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (citations omitted).

## DISCUSSION

### I.    Summary

Plaintiff contends that numerous errors in Customs' investigation were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," requiring this Court to remand the agency's determination. Pl.'s Br. at 1-2, ECF

No. 30.  Plaintiff alleges the following errors:  (1) Customs failed to support its finding that the subject imports were "covered merchandise" at the time of entry; (2) Customs unlawfully applied adverse inferences against Skyview; (3) Customs failed to confer with Commerce in making its country-of-origin assessment, contrary to its statutory obligation to do so; (4) Customs unlawfully shifted the burden of proof onto Skyview; (5) Customs violated Skyview's due process rights by not giving Skyview access to certain confidential information; and (6) Customs unlawfully considered hearsay.  *Id.* The Court considers each of these arguments in turn.

Based on an assessment of both Customs' Final Determination of Evasion and its Administrative Review, the Court finds that Plaintiff's complaints are without merit.   Contrary to Skyview's contentions, Customs thoroughly reviewed and discussed the evidence submitted by the parties; and substantial evidence supports its conclusions. *See* Final Determination, J.A. at 81,616-617, ECF No. 33; Admin. Rev. at 8-15, J.A. at 3,078-085, ECF No. 32.   Despite numerous agency requests for information, Skyview failed to provide support for its claim that the imported merchandise was manufactured in Malaysia.  Final Determination, J.A. at 81,618 n.36, ECF No. 33.  The gap left by this failure, combined with the adverse inference drawn against the alleged manufacturer Rowenda Kitchen for its refusal to provide any of the requested information, led Customs to conclude that the record as a whole supported the allegation of evasion.  *Id*.  Although Customs redacted the adverse photos and videos of Rowenda Kitchen's Malaysia facility as business confidential information, Skyview was on notice that it needed to provide evidence that actual

manufacturing occurred in Malaysia; and Skyview had numerous opportunities to present contrary evidence refuting the allegation.  *Id.*  Furthermore, in its briefs before the agency and this Court, Skyview does not challenge the accuracy of the aggregate statistical evidence suggesting a pattern of transshipment following the imposition of duties on Chinese cabinets.  *See* Pl.'s Br., ECF No. 30 (containing no challenge to the accuracy of evidence against it); *see also* Admin. Rev. at 10, J.A. at 3,080, ECF No. 32 (observing that Skyview placed no challenge to the accuracy of the evidence of evasion onto the record).  Skyview's repeated failure to demonstrate that any actual manufacturing occurred in Malaysia combined with the evidence submitted by MasterBrand led to Customs' evasion finding.  *See* Final Determination, J.A. 81,612-626, ECF No. 33; Admin. Rev. at 9, J.A. at 3,079, ECF No. 32 ("CBP found, based upon direct and circumstantial evidence in the administrative record, that neither Rowenda nor any company in Malaysia had the capacity to produce the WCV.").

## II.   Legal Framework Under EAPA

EAPA calls upon Customs to investigate allegations of evasion.  The statute defines evasion as:

> [E]ntering covered merchandise into the customs territory of the United States by means of any document or electronically transmitted data or information, written or oral statement, or act that is material and false, or any omission that is material, and that results in any cash deposit or other security or any amount of applicable antidumping or countervailing duties being reduced or not being applied with respect to the merchandise.

19 U.S.C. § 1517(a)(5)(A).  "Covered merchandise" is any imported merchandise that is subject to an antidumping or countervailing duty order.  *Id.* § 1517(a)(3)(A)-(B). Transshipment — where goods are manufactured in one country and imported through an intermediary country to evade duties imposed on goods originating from the manufacturing country — is one example of evasion under EAPA.  *See CEK Grp. LLC v. United States*, No. 22-00082, 2023 CIT LEXIS 69, at *10 (CIT May 2, 2023) (discussing a transshipment operation as evidence of evasion under EAPA).

Allegations of evasion may be filed with Customs by any interested party (as defined by the statute) and are to be "accompanied by information reasonably available to the party that filed the allegation."  19 U.S.C. § 1517(b)(2)(B).  Once an allegation of evasion has been submitted, Customs must conduct an investigation within fifteen days if it finds that the allegation and accompanying information "reasonably suggest[] that covered merchandise" has been brought into the United States through evasion.  *Id.* § 1517(b)(1).  If Customs receives an allegation of evasion and it is unable to determine whether the questioned merchandise is within the scope of the relevant order, the agency will refer the question to the Commerce Department for a final determination of that issue.  *Id.* at § 1517 (b)(4)(A); 19 C.F.R. § 165.16.

Customs issues a final determination as to whether evasion has occurred "based on substantial evidence" within three hundred days of the investigation's initiation.   19 U.S.C. § 1517(c).  Within thirty business days of Customs' determination, a party found to have entered covered merchandise through evasion,

or any interested party that filed an allegation, may file an appeal for a *de novo* administrative review.  19 U.S.C. § 1517(f).

## III.   Substantial Evidence Determination

Skyview claims that substantial evidence does not support Customs' finding that the subject imports constitute "covered merchandise."  Pl.'s Reply Br. at 1-6, ECF No. 31.  It alleges that "CBP clearly did not consider 'relevant facts and observations'" but rather "simply believed that it 'was confronted with evidence of basic transshipments[.]'"  *Id.* at 1-2 (quoting Admin. Rev. at 8, J.A. at 3,078, ECF No. 32). Furthermore, Skyview asserts that any discrepancies in the record that did exist were reasonably explainable and thus not fatal to its position.  *Id.* at 3-6.  The Government argues that the Final Determination should be affirmed because "[t]he information Skyview provided failed to overcome the substantial evidence demonstrating evasion, and thus CBP reasonably concluded that the covered merchandise entered the United States through evasion[.]"  Def.'s Resp. Br. at 17, ECF No. 25.

Skyview misinterprets the substantial evidence standard and what it requires. Namely, Skyview ignores that the "possibility of drawing two inconsistent conclusions from the evidence does not preclude the agency's finding from being supported by substantial evidence."  *Jacobi Carbons AB v. United States*, 222 F. Supp. 3d 1159, 1168 (CIT 2017) (citations omitted).  Here, Customs acted within its discretion to determine which of the parties' claims was more compelling based on an assessment of whose evidence was more credible and reliable.  Customs' finding that Skyview's evidence was replete with contradictions, omissions, and inconsistencies is

a valid basis on which to determine that its submissions were not credible and that the record as a whole supported the allegations against it. Final Determination, J.A. at 81,618 n.36, ECF No. 33 (identifying each piece of evidence that was missing or inconsistent in each of Skyview's submissions). A determination where the agency "favor[s] one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." *Elbit Sys. of Am., LLC v. Thales Visionix, Inc.*, 881 F.3d 1354, 1356 (Fed. Cir. 2018) (quoting *In re Cree, Inc.*, 818 F.3d 694, 701 (Fed. Cir. 2016)).

As Customs observed in its Administrative Review, "Skyview does not dispute the accuracy" of the evidence submitted by MasterBrand and "makes no arguments to refute the statements of transshipment declared by the third-party investigator." Admin. Rev. at 10, J.A. at 3,080, ECF No. 32. At oral argument, Plaintiff's counsel confirmed that Skyview did not dispute the accuracy or truthfulness of the aggregate statistical data — critical pieces of evidence that Customs found compelling in its investigation. Oral Argument Tr. at 41:14-25–43:1-10, ECF No. 40 (responding "The aggregate data, it is what it is . . . ." to the Court's summary of the data before the agency). Instead, Plaintiff simply alleges, without specific examples, that the agency's determination was unsupported. *See* Pl.'s Reply Br. at 2-3, ECF No. 31.

Skyview's claims that Customs failed to investigate the discrepancies that it found and that the discrepancies that did exist were minor are equally without merit. *See* Pl.'s Br. at 15, ECF No. 30. Customs specifically identified the discrepancies and omissions that it deemed fatal to the Plaintiff's case and explained what gaps

Skyview's evidence left in substantiating its arguments.  *See* Final Determination, J.A. at 81,624, ECF No. 33; Admin. Rev. at 8, J.A. at 3,078, ECF No. 32.  In the Final Determination, Customs stated that Skyview's responses "do not contain production information demonstrating that the WCV that . . . Skyview imported from Rowenda Kitchen was produced in Malaysia" and that "the existence of various discrepancies and omissions with respect to the RFI responses . . . also call into question the accuracy of information provided[.]"  Final Determination, J.A. at 81,618, ECF No. 33.  Customs then included a footnote that detailed three of the "discrepancies and omissions" that appeared in Skyview's initial submission and that Skyview failed to rectify despite subsequent requests by the agency.  *Id.* at n.36 (citing Skyview's failure to provide additional information about its "local contact" who had allegedly visited the Malaysian manufacturer, its failure to provide requested accounting records from 2019 and 2020, and its failure to provide a specific purchasing order requested by Customs).

     In the Administrative Review, Customs also discussed the issues it found in Skyview's RFI responses.  Customs stated that it "find[s] that the June 7th Submission is inadequate to substantiate Skyview's claim of Malaysian-origin WCV" because "the documents fail to rise to the level of production documents needed to substantiate Skyview's claim that the actual production of its WCV occurred in Malaysia."  Admin. Rev. at 11, 12-13, J.A. at 3, 081 3,082-083, ECF No. 32.  In short, the agency concluded that "[t]here is nothing to indicate that the WCV at issue were produced with the materials and parts included in the various provided invoices, and

the documentation does not confirm the country of origin of the WCV as being Malaysian." *Id.* at 13.  As to the evidence supporting evasion, the agency was equally thorough in its analysis.  In the Final Determination as well as the Administrative Review, Customs identified with specificity the evidence that it found compelling, including the aggregate data, the company-specific shipping data, and the photographs and testimony provided by the investigator.  Final Determination, J.A. at 81,616-617, ECF No. 33; Admin. Rev. at 9-10, J.A. at 3,079-080, ECF No. 32. Skyview does not challenge the accuracy or truthfulness of the aggregate data, as Plaintiff's counsel confirmed before the Court at oral argument. *See* Oral Arg. Tr. at 43:1-10, ECF No. 40.

Skyview's claim that Customs failed to investigate the errors and omissions in Skyview's evidence misconstrues the agency's role, which is to perform an investigation by collecting evidence from the parties and assessing the validity of the evidence it receives.  *See* 19 U.S.C. § 1517(b).  Although the statute empowers the agency to verify that information, it does not mandate verification in all cases.  *Id.* § 1517(c)(2)(B) ("[T]he Commissioner *may* collect such additional information as is necessary to make the determination through such methods as the Commissioner considers appropriate, including by . . . conducting verifications, including on-site verifications, of any relevant information.") (emphasis added).  Customs carried out its statutory duty to investigate the allegation of evasion by soliciting information from the parties, issuing supplemental questionnaires to clarify apparent errors and omissions in the evidence, and assessing the record as a whole to make an informed

determination as to the credibility of the parties' claims.  *See generally* Final

Determination, J.A. at 81,612-626, ECF No. 33.  After numerous attempts to gather

the necessary information from Skyview and the alleged manufacturers led to

inadequate and contradictory responses, Customs determined that verification would

not be necessary or appropriate in this investigation.  An agency decision such as

whether to perform verification is arbitrary and capricious where the agency "relie[s]

on factors which Congress had not intended it to consider, entirely fail[s] to consider

an important aspect of the problem, offer[s] an explanation for its decision that runs

counter to the evidence before the agency, or is so implausible that it could not be

ascribed to a difference in view or the product of agency expertise."  *Nat'l Ass'n of*

*Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 658 (2007) (quoting *Motor*

*Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Automobile Ins. Co.*,

463, U.S. 29, 43 (1983)).  Here, Customs made a specific finding that "there was no

need to consider verification" of the evidence because the agency had determined that

Skyview's submission was "unreliable and therefore, not probative."  Final

Determination, J.A. at 81,625, ECF No. 33.  Where a party's submitted evidence is

substantially incomplete or discredits itself, failing to "verify" that evidence is not an

abuse of the agency's discretion.

Skyview further argues that the evidence it presented should outweigh the

evidence against it.  However, under the substantial evidence standard, "[i]t is not

for this court on appeal to reweigh the evidence or to reconsider questions of fact

anew."  *Trent Tube Div., Crucible Materials Corp. v. Avesta Sandvik Tube*, 975 F.2d

807, 815 (Fed. Cir. 1992); *see also Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43 (discussing the arbitrary and capricious standard and what it requires of the agency); *Downhole Pipe & Equip., L.P. v. United States*, 776 F.3d 1369, 1376 (Fed. Cir. 2015) ("While Appellants invite this court to reweigh this evidence, this court may not do so."). Customs has satisfied its mandate, and substantial evidence supports its evasion determination.

### IV.   Application of Adverse Inferences

EAPA permits Customs to "use an inference that is adverse to the interests of" a party or person who has "failed to cooperate by not acting to the best of the party or person's ability to comply with a request for information[.]"  19 U.S.C. § 1517(c)(3). Skyview contends that Customs' application of adverse inferences against it was arbitrary and capricious because Rowenda Kitchen's failure to respond to Customs' information requests does not permit the agency to apply adverse inferences against Skyview.  Pl.'s Reply Br. at 6-7, ECF No. 31.  Skyview asserts that it cooperated with the investigation to the best of its ability and had no power to induce Rowenda Kitchen to cooperate.  *Id.* at 7.  The Government retorts that Customs did not apply adverse inferences against Skyview but instead applied those inferences solely against Rowenda Kitchen.   Def.'s Resp. Br. at 17-19, ECF No. 25;   Final Determination, J.A. at 81,618, 81,624, ECF No. 33.  Customs granted Rowenda "three extensions to the deadline for response and warned that [it] may apply adverse inferences if the company does not respond."  Def.'s Resp. Br. at 18-19, ECF No. 25. Nonetheless, Rowenda Kitchen "flatly refused to cooperate[.]"  *Id.*  Any collateral

consequences the decision to draw an adverse inference against Rowenda Kitchen had on Skyview were permissible under the statute.  *Id.* at 19-20 (citing *Mueller Commercial de Mexico S. de R.L. de C.V. v. United States*, 753 F.3d 1227, 1233-36 (Fed. Cir. 2014)).

First, Customs drew no adverse inferences against Skyview.  It only drew an adverse inference against Rowenda Kitchen for its failure to respond to multiple requests for information.  Final Determination, J.A. at 81,618, ECF No. 33 ("The claimed manufacturer, Rowenda Kitchen, did not provide an RFI response, despite being given multiple opportunities to do so . . . . There is no basis for concluding that Rowenda Kitchen was unable to provide a response to its RFI, and application of adverse inference to that party is appropriate."); *see also* Final Determination, J.A. 81,624, ECF No. 33 ("CBP is not making an adverse inference against Skyview in this case.").  Any contrary claim by Skyview is mistaken.  *Cf.*  Pl.'s Br. at 20, ECF No. 30 ("CBP Unlawfully Applied Adverse Inferences Against Skyview").

Second, as to the application of adverse inferences against Rowenda, the statute offers clear instruction.  Customs may draw adverse inferences against a party that "has failed to cooperate by not acting to the best of the party or person's ability to comply with a request for information[.]"  19 U.S.C. § 1517(c)(3)(A).  Eligible parties against whom an adverse inference may be drawn include "a person that is a foreign producer or exporter . . . of covered merchandise" such as Rowenda Kitchen.  *Id.* § 1517(c)(2)(A)(iii).  In its Final Determination, Customs explained that it was drawing an adverse inference in selecting from facts otherwise available for its

country-of-origin analysis to fill the gaps that Rowenda Kitchen's repeated refusal to

cooperate created:

> The claimed manufacturer, Rowenda Kitchen, did not
> provide an RFI response, despite being given multiple
> opportunities to do so. The RFI issued to Rowenda Kitchen
> requested significant information relating to its production
> and sale activities, including transactions related to the
> Importers. There is no basis for concluding that Rowenda
> Kitchen was unable to provide a response to its RFI, and
> application of adverse inference to that party is
> appropriate.

Final Determination, J.A. at 81,618, ECF No. 33. Although Skyview argues that it

suffered collateral consequences because of Customs' drawing an adverse inference

against Rowenda Kitchen, Skyview's citation to cases in the antidumping context

governing when a cooperating party may nonetheless have an adverse inference

drawn against *it* for *another party's* failure to cooperate misses the mark. *Compare*

Pl.'s Br. at 22, ECF No. 30 (citing caselaw to support Plaintiff's argument that adverse

inferences cannot be applied against a cooperating party except in the specific

instance where there is substantial evidence that the cooperating party has leverage

to induce cooperation from the non-cooperating party), *with Mueller*, 753 F.3d at 1236

("[W]e do not bar Commerce from drawing adverse inferences against a non-

cooperating party that have collateral consequences for a cooperating party. Where

an adverse inference is used to calculate the rate of a non-cooperating party that rate

may sometimes be used in calculating the rate of a cooperating party and thus have

collateral consequences for the cooperating party.") The discussion of what must be

shown in order to apply adverse inferences against a cooperating party because of its

non-cooperating compatriots is irrelevant where the agency applied an adverse
inference against the non-cooperating party. *See* Final Determination, J.A. at 81,618,
ECF No. 33; Admin. Rev. at 7, J.A. at 3,077, ECF No. 32. Indeed, the statute permits
Customs to draw an adverse inference against a non-cooperating party "without
regard to whether another person involved in the same transaction or transactions
under examination has provided the information sought." 19 U.S.C. § 1517(c)(3)(B).
Skyview does not point to specific information on the record that *it* provided that
might lessen any collateral consequences to *Skyview* of Customs' decision to draw an
adverse inference against Rowenda. Consequently, Skyview has pointed to no reason
to disturb Customs' decision to draw an adverse inference against Rowenda Kitchen
based on Rowenda Kitchen's failure to cooperate with the investigation.

## V.   Failure to Confer with Commerce

EAPA requires Customs to investigate whether covered merchandise has
entered into the United States through evasion, which the agency does by assessing
the evidence it receives from interested parties regarding the merchandise's country
of origin. 19 U.S.C. § 1517(c)(1)(A); 19 C.F.R. § 165.27(a). Skyview claims that,
because there are allegedly conflicting facts regarding the country of origin of the
subject merchandise entered into the record, the statute required Customs to refer
the matter to Commerce for consultation. Pl.'s Br. at 25, ECF No. 30; Pl.'s Reply Br.
at 7-8, ECF No. 31. Customs' failure to confer with Commerce, according to Skyview,
makes its determination "arbitrary, capricious, an abuse of discretion, or otherwise
not in accordance with law." Pl.'s Br. at 25, ECF No. 30. In response, the Government

observes that Skyview misinterprets the statute, which is meant to apply only where the question that Customs is unable to answer pertains to the scope of the orders. Def.'s Resp. Br. at 20, ECF No. 25.   In other words, the Government posits that the statute instructs Customs to confer with Commerce only in the specific situation where it is "unable to determine whether the imported merchandise is the type of merchandise covered by the scope of the order at issue." *Id.*  To adopt Skyview's much broader interpretation would, according to the Government, "essentially strip CBP of its authority to investigate evasion of AD/CVD duties because any such finding would be immediately transferred to Commerce." *Id.*  The Government also argues that the statute authorizes Customs to determine whether imported merchandise is "covered merchandise" — an essential component of the investigatory duties assigned to Customs — and only when that determination *cannot* be made is Customs instructed to confer with Commerce.  *Id.* at 21.  Finally, the Government contends that there is no question here as to whether the merchandise at issue was "covered merchandise" so that the provision of the statute discussing how Customs must resolve a contested question is irrelevant.  *Id.*

The language of the statute is clear:  Customs "shall . . . refer the matter to [Commerce] to determine whether the merchandise is covered merchandise" when Customs "is unable to determine whether the merchandise at issue is covered merchandise."  19 U.S.C. § 1517(b)(4)(A)(i).  Thus, only when there is a dispute about whether the merchandise is the *type* of merchandise that would be subject to an

antidumping or countervailing duty order must Customs refer the dispute to Commerce for determination. *Id.*

Here, there is no dispute about whether the wooden vanities and cabinets at issue are of the type that would be subject to the antidumping and countervailing duty orders. At issue in the investigation is only the country of origin for the merchandise in question. If the cabinets and vanities originate from China, the Orders apply; if they originate from Malaysia, the Orders do not. The statute delegates the determination of the country of origin to Customs. *See* 19 U.S.C. § 1517(c)(1)(A); 19 C.F.R. §165.27(a) (both providing that Customs "shall make a determination . . . with respect to whether such covered merchandise was entered into the customs territory of the United States through evasion"). As Customs explained in its Administrative Review:

> Here, there is no dispute that if Chinese-manufactured WCV were shipped directly from China to the United States, the WCV would fall under the AD/CVD orders. There is also no dispute that Skyview's entries were entered as classified under subheading number, 9403.40.9060, HTSUS, and, again, if of Chinese origin, are within the scope of the AD/CVD Orders. The only fact in contention is whether the WCV at issue are in fact of Chinese origin.

Admin. Rev. at 7-8, J.A. at 3,077-78, ECF No. 32.

Plaintiff's counsel conceded this point at oral argument, agreeing that the wooden cabinets and vanities imported by Skyview would be within the scope of the Orders if found to have originated from China. Oral Arg. Tr. at 43:11-19, ECF No. 40 (responding "We do not dispute that" to the question of whether, if the goods had been

purchased from China, "they would be subject to the anti-dumping order and within scope"). Because there is no dispute about whether the wooden cabinets and vanities Skyview imported are of the type covered by the Orders, there was no dispute over the Orders' scope that should have been referred to Commerce. *See* 19 U.S.C. § 1517(b)(4)(A) (requiring a dispute over whether the merchandise is covered by an order). The statutory provisions regarding referral are thus irrelevant, and Skyview's arguments that Customs abused its discretion by not seeking Commerce's guidance are meritless.

## VI.  Burden Shifting

EAPA provides that Customs "may collect such additional information as is necessary to make the determination" by "conducting verifications, including on-site verifications, of any relevant information." 19 U.S.C. § 1517(c)(2); *see also* 19 C.F.R. § 165.25(a) ("Prior to making a determination . . . CBP may in its discretion verify information . . . as is necessary to make its determination."). Skyview argues that Customs' determination must be reversed because, under the statute, the agency "was required to verify the facts presented by both Skyview and Masterbrand" but that "[t]he record is absent of CBP doing anything beyond the beginning phase of the EAPA action." Pl.'s Reply Br. at 9, ECF No. 31. Skyview argues that, by failing to verify the submitted information, Customs unlawfully shifted the burden onto Skyview, requiring it to disprove the allegations made against it. Pl.'s Br. at 30, ECF No. 30. The Government responds that Skyview has misconstrued the statute. Def.'s Br. at 21-22, ECF No. 25. It is the respondent that bears the burden of establishing

its right to any reduced duty and that requiring "the Government to affirmatively prove the origin of material before assigning duties would both frustrate the statutory directive and incentivize respondents to withhold information." *Id.* at 22.  Further, the Government argues that "verification" does not require Customs to "[conduct] an independent search based upon a party's unsupported assertions" but rather "is a process to confirm information it has already received." *Id.* at 23.  Ultimately, the Government argues that Customs was within its authority to determine that the information it received from Skyview was not credible and to decline to conduct any further investigation or verification on the company's behalf. *Id.*

After receiving a plausible allegation of evasion of customs duties, Customs "shall initiate an investigation" and make a determination based on "substantial evidence." *See* 19 U.S.C. §§ 1517(b)(1), (c)(1)(A).  The substantial evidence standard requires the agency to consider the record as a whole, including "whatever in the record fairly detracts from its weight[,]" and render a decision based on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477-488 (1951); *Nippon Steel*, 458 F.3d at 1351; *DuPont Teijin Films USA v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005).  Where the record would support more than one conclusion by substantial evidence, the agency's choice between the options governs. *See Universal Camera Corp.*, 340 U.S. at 488 (holding that a court cannot "displace the [agency's] choice between two fairly conflicting views").

Customs' regulations implementing the statute define the administrative record, permit Customs to obtain additional information by issuing requests for information, and allow parties to voluntarily submit information for the agency's consideration.  19 C.F.R. §§ 165.21, 165.23.  It is from this record — built largely by the parties themselves — that Customs makes its determination regarding whether evasion has occurred.  Here, Customs did not shift the burden onto Skyview by requiring Skyview to "disprove" the allegations.  Rather, after reviewing all the evidence offered by the parties and making numerous attempts to build a more complete record by soliciting additional, missing information from Skyview, Customs found that substantial evidence supported the evasion allegations.  *See* Final Determination, J.A. at 81,617, ECF No. 33 (stating that the general shipping patterns of covered merchandise between China, Malaysia, and the United States; the specific shipping data from Rowenda Kitchen; and the affidavits are "applicable in CBP's final determination with regard to whether substantial evidence exists of evasion by the Importers.").

Regarding Plaintiff's claim that Customs was required but failed to perform a verification of the evidence it provided, the Court agrees with the Government's interpretation of Customs' duty.  As discussed above, under 19 C.F.R. § 165.25(a), "CBP *may in its discretion* verify information in the United States or foreign countries collected under § 165.23 as is necessary to make its determination" (emphasis added); but where the agency has determined that the evidence is not credible or is otherwise lacking, it is not required to conduct verification.  In this case, the agency stated in

the Final Determination that there was "no need to consider verification of the information" because it had already determined that the submissions were "unreliable and therefore, not probative." Final Determination, J.A. at 81,625, ECF No. 33. Specifically, the agency explained that "the onus is on Skyview, as the importer, to investigate and know the full production chain of its imports and to provide CBP with accurate information." Admin. Rev. at 13, J.A. at 3,083, ECF No. 32. Having failed to provide such information, the agency reasonably determined that there was nothing to verify. *Id.* Customs' decision not to verify did not have the effect of shifting any evidentiary burdens. The substantial evidence standard continued to govern. *See id.* at 9 (explaining that the final affirmative determination was supported by the absence of a "dispute as to whether the WCV are in scope merchandise, if of Chinese origin" and that "CBP found, based upon direct and circumstantial evidence in the administrative record, that neither Rowenda nor any company in Malaysia had the capacity to produce the WCV.").

## VII. Due Process

Skyview raises a constitutional challenge under the Due Process Clause to the procedures Customs employed in this investigation. Plaintiff takes issue with Customs' reliance on photographs and videos[1] of the alleged manufacturer's facility

---

[1] Although the Court will analyze Skyview's claims regarding the photos and videos, Skyview has likely forfeited its claim regarding the videos. It did not raise any constitutional claim regarding the video evidence before the agency and made but a bare mention of the videos in the due process section of its brief to the Court. *Compare* Oral Arg. Tr. at 73:10-13 (pointing to the bottom two sentences on page 33 of Skyview's opening brief), *with* Pl.'s Br. at 33 ("It is worth noting that videos in the Administrative Record also differ from the investigator's depiction of the manufacturing location.").

while redacting them from its view as "business confidential." Pl.'s Br. at 33-34, ECF
No. 30.  Without having access to those photos and videos before filing suit at the
Court of International Trade, Skyview claims that "CBP deprived Skyview of the
opportunity to review, evaluate, and comment on business confidential data and,
consequently, a fair opportunity to defend itself." *Id.* at 34.  In its brief, the
Government argues that Customs met its requirement to provide the plaintiff with
"notice and a meaningful opportunity to be heard" but "that right does not entitle an
importer to all information upon which CBP makes its determination." Def.'s Resp.
Br. at 24, ECF No. 25.  The Government points to 19 C.F.R. § 165.4 and the
accompanying notes, which outline how such materials are to be treated throughout
the course of an EAPA investigation. *Id.* at 25.  That provision, according to the
Government, describes a balance of interests whereby the confidentiality of the
submitting party is protected while the party against whom the documents are being
used is given access to a public version of the materials, including summaries of the
"confidential" information. *Id.*  The Government contends that Customs properly
executed this balance because "Skyview was on notice as to what information CBP
would require for its investigation, and the type of evidence it was reviewing, and
thus had plenty of opportunity to submit its own evidence." *Id.* at 26.

    Due process guarantees parties a "right to notice and a meaningful opportunity
to be heard." *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 761-62 (Fed.
Cir. 2012) (quoting *LaChance v. Erikson*, 522 U.S. 262, 266 (1998)).  As the Supreme
Court has instructed, "the due process clause forbids an agency to use evidence in a

way that forecloses an opportunity to offer a contrary presentation." *Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 288 n.4 (1974) (citing *Ohio Bell Telephone Co. v. Public Utilities Comm'n*, 301 U.S. 292 (1937) and *United States v. Abilene & S.R. Co.*, 265 U.S. 274 (1924)).   Thus, one way to substantiate a claim that an agency has violated a party's due process rights is to demonstrate that agency action has inhibited a party's ability to present its case or to respond to evidence being used against it.   In the narrow confines of Plaintiff's specific claims in this case, it has failed to make such a showing.

Customs provided summaries of the confidential evidence.   Although Customs redacted the photos and videos as confidential business information, the narrative form of the allegations describes their content with enough specificity that Plaintiff was put on notice and able to offer counterevidence.   MasterBrand Allegation at 10-11, J.A. at 1,163-164, ECF No. 32; Notice of Initiation at 2-4, J.A. at 1,423-424, ECF No. 32.   Plaintiff does not dispute that it was aware that the question of whether any manufacturing occurred in Malaysia was the key question before Customs.   Oral Arg. Tr. at 65:7-18 (asking Skyview's counsel whether lack of information on the contents of the photos and video prevented Skyview's agent from making photos and videos of its own and hearing no dispute); *see also* Final Determination, J.A. at 81,625 n.67, ECF No. 33 (discussing Skyview's failure to provide any evidence of manufacturing in Malaysia).   In the unique context of photos and videos, nothing Customs did prevented Skyview from submitting photos and videos of any facility in Malaysia that Plaintiff claimed manufactured the merchandise in question.   Skyview was free to

begin outside the alleged manufacturing facility and create a video walkthrough demonstrating actual manufacturing of wooden cabinets and vanities. Such evidence would have refuted MasterBrand's claims of transshipment. Indeed, Skyview claims to have sent a person to Malaysia for this purpose. Oral Arg. Tr. at 51:9-16, ECF No. 40. Yet, despite taking advantage of the ability to procure such evidence, the unidentified agent who allegedly traveled to Malaysia on Skyview's behalf provided no photos, videos, or other evidence to demonstrate what he observed at the facility. *Id.* at 52:3-25–53:1-13. The only photos that Skyview did submit of the Malaysian facility were piecemeal and apparently originated from the otherwise unresponsive party, Rowenda Kitchen. *Id.* at 51:21-25. Having had adequate notice of what type of evidence was necessary to refute the claims MasterBrand made, Skyview sought to procure such evidence and came up short. Due process requires notice and an opportunity to be heard by providing evidence at a meaningful point in the proceedings. *See PSC VSMPO-Avisma Corp.*, 688 F.3d at 761-62 (finding that, where a party was aware of the evidence that might be used against it and had "the opportunity to put forth evidence" to support an alternative conclusion, there is no due process violation). Plaintiff received that opportunity, and its as-applied due process challenge regarding photographic and video evidence must therefore fail.

## VIII.  Hearsay

Finally, Skyview argues that evidence provided by a third-party investigator, paid by MasterBrand, constituted unlawful hearsay and thus should not have been considered by Customs in making its determination. Pl.'s Br. at 34-37, ECF No. 30;

Pl.'s Reply Br. at 11-12, ECF No. 31.  Citing the Administrative Procedure Act and Federal Circuit precedent, the Government argues that hearsay evidence is admissible where it is relevant and credible.  Def.'s Resp. Br. at 28, ECF No. 25.  In this case, the Government argues that "the affidavits are not irrelevant, immaterial, or unduly repetitious, and Skyview has presented no evidence calling into question the truthfulness, reasonableness, and credibility of the affiants." *Id.* at 29.  Therefore, the Government urges the Court to affirm Customs' inclusion of the third party's affidavits.  *Id.*

For better or worse, the Federal Rules of Evidence do not govern administrative adjudications.  *See* Fed. R. Evid. 801(c) (defining hearsay as an out-of-court statement "a party offers in evidence to prove the truth of the matter asserted in the statement").  It is long established that agencies may consider hearsay and that it "may be treated as substantial evidence, even without corroboration if, to a reasonable mind, the circumstances are such as to lend it credence." *Hayes v. Dep't of the Navy*, 727 F.2d 1535, 1538 (Fed. Cir. 1984); *see also Richardson v. Perales*, 402 U.S. 389, 407-08 (1971) (clarifying that hearsay evidence is not prohibited in administrative proceedings if it is reliable and probative).  Plaintiff's reason for attacking the credibility of the hearsay statements is that they are "biased towards, prejudice[d] against, and [are] adverse to Skyview based on MasterBrand's employment of the services" — in other words, that the investigator was on MasterBrand's payroll.  Pl.'s Br. at 36, ECF No. 30.  Customs noted that the allegations made in the investigator's report were corroborated by "foreign market

research . . . conducted by disinterested entities, including U.S. government agencies, not parties to the case[.]"  Admin Rev. at 14, J.A. at 3,084, ECF No. 32.  Therefore, Customs found "no reason to conclude that this information is biased or irrelevant[.]" *Id.*  Because admission of hearsay evidence is permitted in administrative proceedings and Customs adequately explained why it considered the challenged evidence credible, substantial evidence supports its determination.

## CONCLUSION

Skyview has raised several procedural claims against Customs' evasion determination in addition to questioning its evidentiary basis.  All of Skyview's objections fail.  The Court therefore **SUSTAINS** Customs' Final Determination of evasion in EAPA case number 7553 and **SUSTAINS** the January 28, 2022 decision in Administrative Review number H321677.

                                                    /s/ Stephen Alexander Vaden
                                                    Stephen Alexander Vaden, Judge


Dated: June 20, 2023
           New York, New York